[No. 48506–2. En Banc. February 10, 1983.]

CATHERINE GLOVER, *as Guardian, Respondent,* v.
TACOMA GENERAL HOSPITAL, *Petitioner,*
MARTHA COWGILL, ET AL,
*Respondents.*

*Reed, McClure, Moceri & Thonn, P.S.,* by *Kathy A. Cochran,* for petitioner.

*Daniel F. Sullivan & Associates,* by *Daniel F. Sullivan, Thomas R. Golden, Phillip Offenbacker,* and *Mary Ellen Goodwin,* for respondent Glover.

*Williams, Lanza, Kastner & Gibbs,* by *Mary H. Spillane,* for respondents Cowgill, et al.

*Billett, Comfort & Rosenow,* by *Allan R. Billett* and *Todd M. Worswick,* for respondents Backup, et al.

*Lane, Powell, Moss & Miller,* by *C. William Bailey, C. Danny Clem, Prosecuting Attorney for Kitsap County,* and *Patricia K. Schafer, Deputy,* amici curiae.

CUNNINGHAM, J.*—Petitioner challenges a superior court judge's denial of summary judgment and approval of a settlement pursuant to the terms of Washington's contribution statute, RCW 4.22.040–.920. The case presents issues of first impression regarding the tort reform act, Laws of 1981, ch. 27 (hereinafter the Act). For the reasons discussed below, we remand for entry of partial summary judgment on the issue of vicarious liability and for trial on the independent liability claim. Furthermore, we find that the set-

---

*Judge D. J. Cunningham is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amend. 38).

tlement was reasonable, given the factors outlined in this opinion.

## I

The case arises from a medical malpractice action involving the treatment of Jimmie Lee Cobb. On April 25, 1979, Ms. Cobb was admitted to Tacoma General Hospital for surgery. Complications arose during the administration of the anesthetic, when Ms. Cobb became hypotensive and lapsed into a coma. Apparently suffering irreversible brain damage, Ms. Cobb has been comatose since that date.

Her sister, Catherine Glover, was appointed guardian ad litem. She sued, on Jimmie's behalf, the following defendants: (1) Tacoma General Hospital, (2) Dr. Martha Cowgill, the anesthesiology resident trainee who administered the anesthetic, (3) Dr. Phillip Backup, a member of the anesthesiological staff, and (4) the University of Washington Hospital. Dr. Backup was supervising Dr. Cowgill during the procedure. Later, the plaintiff amended her complaint and added two additional defendants: the State of Washington, acting through the Board of Regents, doing business as the University of Washington Medical School, where Dr. Cowgill was a resident, and Tacoma Anesthesia Associates, Inc., Dr. Backup's employer. Plaintiff's complaint alleged, *inter alia,* negligence in the administration of the anesthetic and breach of the hospital's duty of care to the patient. Plaintiff also alleged that the hospital was vicariously liable for the negligent acts of its agents Cowgill and Backup.

Tacoma General answered by denying the allegations and filing a cross claim for contribution from defendants Cowgill, Backup, University of Washington Hospital, the State of Washington and Tacoma Anesthesia Associates, Inc.

Plaintiff and defendants Cowgill, Backup, University of Washington Hospital, the State of Washington and Tacoma Anesthesia Associates agreed to settle the case for $575,000. Tacoma General apparently did not participate in these negotiations, and the release instrument specifically

excluded Tacoma General. Plaintiff then sought court approval of the settlement, as required by RCW 4.22.060. This statute, enacted in 1981, creates a right of contribution between joint tortfeasors. It also establishes procedures for implementing that right. According to the terms of the statute,

> A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement *unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.*

(Italics ours.) RCW 4.22.060(2). As the above language indicates, RCW 4.22.060(2) requires that the court enter either a finding that the settlement amount is reasonable or that another, presumably higher, amount is reasonable.

Following plaintiff's petition for approval of the settlement, Superior Court Judge Waldo Stone heard argument on the reasonableness of the settlement. Tacoma General, urging that the proposed settlement was unreasonable, argued the settling defendants were the ones principally liable to the plaintiff. This settlement left Tacoma General, alone, exposed to a potential verdict of $2.5 million, with an offset of only $575,000. After evaluating the evidence, Judge Stone concluded that the $575,000 was a reasonable settlement. He therefore dismissed Tacoma General's cross claim for contribution.

In addition to its resistance to the proposed settlement, Tacoma General moved for summary judgment against the plaintiff on the issue of vicarious liability. This motion, as well as Tacoma General's motion for summary judgment of dismissal, were denied. Tacoma General sought discretionary review only on the issues pertaining to the vicarious liability claim. We granted this limited review.

Tacoma General now urges that the trial judge erred in applying the contribution statute, RCW 4.22.040-.920. Specifically, it assigns error to the trial court's rulings (1) that the settlement was reasonable; (2) that the motion for summary judgment should be denied; and (3) that Tacoma General's cross claim for contribution and/or indemnity should be dismissed.

We hold that RCW 4.22.040(1) requires that the vicarious liability claim against Tacoma General Hospital be dismissed, that the trial judge properly dismissed Tacoma General's cross claims for contribution, and that the settlement was reasonable. We believe this result is most consistent with the Legislature's intent in passing the tort reform act. A review of the common law prior to the Act and an analysis of the Act itself demonstrates this point.

## II

Plaintiff Glover alleged two principal forms of liability against Tacoma General Hospital. First, plaintiff alleged that Tacoma General breached an independent duty to provide proper treatment. Second, she alleged that the hospital was vicariously liable for the acts of the anesthesiologists.

The first claim presents a classic multiple tortfeasor situation. In *Seattle–First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 235, 588 P.2d 1308 (1978), this court described the various types of tortfeasors and the implications arising from each classification.

There the court noted:

It has long been recognized that the single tort–feasor is liable for all damage for which his tortious conduct is a proximate cause. In the case of multiple tort–feasors the principle is the same. That is, each multiple tort–feasor is personally liable for any injury for which his tortious act is *a* proximate cause.

Multiple tort–feasors are often characterized as "joint", "concurrent", or "successive" when differentiating between the *type of harm* caused and the *nature of the duty owed*. Joint tort–feasors are those who have acted in common or who have breached a joint duty.

Concurrent tort–feasors are those whose independent acts concur to produce the injury. Significantly, the *harm* caused by both joint and concurrent tort–feasors is *indivisible.* The distinguishing factor between these types of tort–feasors is the duty breached. Joint tort–feasors breach a joint duty whereas concurrent tort–feasors breach separate duties.

Since the harm caused by both joint and concurrent tort–feasors is indivisible, similar liability attaches. We have long held that such tort–feasors are each liable for the entire harm caused and the injured party may sue one or all to obtain full recovery.

(Footnote and citations omitted.) *Shoreline Concrete,* at 234–35. This latter concept is known as joint and several liability. Under the common law, contribution—the right of one tortfeasor to recover from another amounts paid to the injured plaintiff—did not exist. *See* W. Prosser, *Torts* § 50, at 306 (4th ed. 1971). The rationale most often suggested for the denial of contribution was the belief that a tortfeasor was a wrongdoer and should be denied the assistance of the courts. In drafting the Uniform Contribution Among Tortfeasors Act, the commissioner offered the following observations on the fairness of this rule:

It is apparent that an injury resulting from the joint tort of two or more persons involves each of them, jointly and severally, in liability for the entire damage. It is equally apparent that this is an instance of a common obligation resting on two or more, the discharge of which by one of them accrues to the advantage of the others. At first blush, this appears to be a typical instance of the discharge of a common liability to be governed by the principle of contribution. But the policy of Anglo–American common law has been to deny assistance to tortfeasors on the understanding that they are wrongdoers and hence not deserving of the aid of courts in achieving equal or proportionate distribution of the common burden.

As an original proposition, all might agree that courts should not lend their aid to rascals in adjusting differences among them. But all tortfeasors are not rascals, in spite of the literal translation of the term as wrongdoers. Most joint and several tort liability results from inadver-

tently caused damage, although it is almost impossible to draw a practical line between torts of inadvertence and others. It is, then, somewhat ironic to note that at common law contribution is denied among all tortfeasors and is allowed as a matter of course to one who has deliberately chosen to violate a contractual obligation undertaken with others.

12 U.L.A., Comm'rs Note (1939 Act), at 60 (Master ed. 1975).

Despite criticism such as this, few courts judicially abolished the ban of contribution. Most states have, however, established a right of contribution through legislation. For instance, 20 states have adopted various versions of the Uniform Contribution Among Tortfeasors Act. *See* Unif. Acknowledgement Act § 2, 12 U.L.A. 9 (Master ed. 1975). Other states have preferred to draft their own legislation. *See, e.g.,* Cal. Civ. Proc. Code § 877 (Deering 1973).

Washington courts followed the common law rule and also refused to adopt contribution. *See Wenatchee Wenoka Growers Ass'n v. Krack Corp.*, 89 Wn.2d 847, 576 P.2d 388 (1978). Then, in 1981, the Legislature addressed the problem and undertook an extensive reform of tort law. From this effort, the tort and product liability reform act, Laws of 1981, ch. 27, emerged. The Act principally concerns product liability law. Those sections of the Act are codified in RCW 7.72. Sections pertaining to contribution are codified in RCW 4.22. Only the latter portions of the Act are before us here.

The statute pertaining to contribution accomplishes several things. First, it specifically retains and codifies the concept of joint and several liability. RCW 4.22.030. Second, it establishes rights of contribution between joint tortfeasors whether or not judgment has been recovered against any or all of them. RCW 4.22.040(1). That right may be enforced either in the original action or a separate action brought for that purpose. RCW 4.22.040(1). The basis of the right of contribution is the comparative fault of each tortfeasor. RCW 4.22.040(1). Third, the act sets out proce-

dures for enforcing the right of contribution and provides for court approval of settlements. RCW 4.22.050, .060. Fourth, it abolishes the common law right of indemnity between active and passive tortfeasors. RCW 4.22.040(3).

On the other hand, the Act leaves a number of questions unanswered. Some of those questions were answered by a "technical amendment" passed in 1982,[1] but others present questions of interpretation. It is to two such questions that we now turn.

## III

The first issue raised by this appeal is whether the settlement approved by the trial court was reasonable under the terms of the statute. That question must be placed in context of the legal consequences of a reasonableness determination. There are two such consequences. First, although RCW 4.22.040(2) provides that a settling defendant may recover contribution against one whose liability to the plaintiff has been extinguished by the settlement, the extent of that recovery is limited to a reasonable amount. For instance, if A and B both cause injury to C, and A settles with C and extinguishes B's liability to C, A may recover contribution from B; but only if the amount he paid was reasonable. If it was not reasonable, because he paid too much to settle, the amount he may recover as contribution will be reduced to what would have been a reasonable settlement.

---

[1]The original act provided that the act would apply to all claims arising on or after July 26, 1981, and that RCW 4.22.040 and .050, the right of contribution, would apply to all cases which had not gone to trial or settled by that date. The procedures for enforcing that right, the reasonableness determination contained in RCW 4.22.060, were not specifically applied to those claims arising before July 26, 1981, but not yet tried. This fact created much confusion as to whether settling defendants had to seek court approval and whether the nonsettling defendant's right of contribution could be ever cut off. Tacoma General originally advanced this argument but Judge Stone rejected it, ruling quite correctly that the lack of reference to RCW 4.22.060 was in all likelihood a legislative omission. His position was confirmed when the Legislature met in 1982 and passed a technical correction, retroactively applying the terms of RCW 4.22.060 for those claims arising before July 26, 1981. Laws of 1982, ch. 100, § 2, p. 467; RCW 4.22.920(2).

The second consequence of a reasonableness determination is the one which arises here. Five of the six defendants have now settled with the plaintiff and left Tacoma General potentially subject to a huge judgment at trial. The effect of a reasonableness finding in this case is to determine the amount of offset to which Tacoma General will be entitled against that judgment. Tacoma General thus has a significant interest in seeing that the settlement is found to be unreasonable. If it succeeds in doing so, it can have the amount of offset enlarged to an "amount determined by the court to be reasonable." RCW 4.22.060(2).[2]

The reasonableness determination, therefore, is of great importance to both settling and nonsettling defendants. Unfortunately, despite the importance of the term, the Legislature declined to define it, apparently deferring to the courts. The Senate Select Committee on Tort and Product Liability Reform Final Report (hereinafter Senate Report) contains the following discussion on this issue:

> The bill does not establish any standards for determining whether the amount paid for the release was reasonable or not. It is felt that the courts can rule on this issue without specific guidance from the Legislature. The reasonableness of the release will depend on various factors including the provable liability of the released parties and the liability limits of the released party's insurance.

Senate Report, at 54. Presumably, therefore, this court has a relatively free hand in determining what factors should be considered at the reasonableness hearing. The briefs in this case suggest two extremes. Plaintiff Glover urges that a reasonable finding is a factual determination subject to great deference by appellate courts. Citing authority from

---

[2]Some trial judges have apparently read the Act so that the effect of finding a settlement to be unreasonable was to bar the settlement. RCW 4.22.060(3) states that the finding of unreasonableness *shall* not affect the validity of the agreement between the released and releasing party. Thus, the statute does not authorize trial court interference with the settlement process. Settlements must therefore be approved, unless the nonsettling defendant presents evidence of collusion. In that case, trial judges may refuse approval pursuant to their inherent authority.

California, plaintiff then goes on to argue that the only real issue as to reasonableness is whether the parties acted in good faith. We find other states' interpretations of their statutes unpersuasive authority for interpreting our own. Also, plaintiff's position ignores the above quoted language from the Senate Report and focuses instead upon language that indicated that the committee had a "legitimate concern" that parties would enter into "sweetheart deals". Plaintiff proposes too narrow a test. Her test totally disregards other purposes of the Act, for instance, insuring a more equitable distribution of payment among defendants according to liability.

Tacoma General's position, on the other hand, reflects the other extreme. Tacoma General contends that the primary concern is that the settlement strictly reflect the defendant's relative liability. This approach is impractical. A trial judge faced with the task of determining whether a settlement is reasonable under such a test would be required to conduct a mini–trial to determine each defendant's proportion of liability. Or, alternatively, he could postpone approval of the settlement until sometime during or after the litigation between the plaintiff and nonsettling defendant. The first alternative is cumbersome, the second imposes a potential hardship on plaintiffs. Under such a rule, plaintiffs would be forced to litigate without the benefit of knowing how much of the judgment would be lost to an offset.

The amicus brief suggests a better rule. It outlines several factors and urges that all be considered. The factors suggested are:

> [T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.

Brief of Amicus, at 12. We believe each of these factors are proper considerations for a trial judge to use in approving settlements. We emphasize, however, that no one factor should control. The trial judge faced with this task must have discretion to weigh each case individually.

Turning to the case here, the record indicates that the trial judge considered several factors, including the risks of litigation, the lack of bad faith and the interests of Tacoma General Hospital. It is unclear, however, the extent that these factors influenced his decision and to what extent other factors played a role in his decision. Still, the record contains enough evidence to support his conclusion. For instance, Judge Stone heard expert testimony[3] from a well known and respected plaintiff's attorney that suggested that the plaintiff stood a significant risk of losing at trial. Report of Proceedings, at 16. This evidence combined with the substantial size of the settlement leads us to conclude that Judge Stone properly found the settlement to be reasonable. In doing so, we note that the finding of reasonableness necessarily involves factual determinations. Factual determinations will not be disturbed on appeal when, as here, they are supported by substantial evidence. *See Peeples v. Port of Bellingham*, 93 Wn.2d 766, 771, 613 P.2d 1128 (1980). To aid in appellate review in the future, however, trial judges should enunciate those factors which lead them to conclude that a settlement is reasonable.

## IV

The next issue before this court concerns the effect release of an agent has upon the vicarious liability of a principal. Under the facts of this case, we hold that the trial judge erred in not dismissing the vicarious liability claim after approving a reasonable settlement between the

---

[3]The statute does not specify how a hearing on this issue should be conducted. Where, as here, the issues are complex and the case substantial, a trial judge may require the assistance of an expert witness. Nothing in the statute requires such testimony, however, and we are confident that trial judges will develop their own procedures for handling these cases.

alleged agent and the plaintiff.

Plaintiff bases her vicarious liability claim on the theory that the anesthesiologists, Drs. Cowgill and Backup, were employees or agents of Tacoma General Hospital. In *Adamski v. Tacoma Gen. Hosp.*, 20 Wn. App. 98, 579 P.2d 970 (1978), Division Two of the Court of Appeals held that the question of whether physicians are hospital employees or independent contractors generally presents an issue of fact. Summary judgment on this issue is therefore inappropriate. For the purposes of this appeal only, however, Tacoma General asks this court to assume an agency relationship between it and the anesthesiologists. Assuming that relationship exists, Tacoma General urges that under common law, release of an agent released the principal. Petitioner argues further that the contribution statute's reference to a "single entity" preserves this doctrine. We find this argument persuasive but for reasons other than those advanced by petitioner. Again, the common law creates the analytic tool by which to interpret this section of the contribution statute.

Case law governing the relationships between a third party, an agent and a principal in this state is sketchy. Our cases establish two propositions, however. First, if the injured party chooses to seek redress from the agent, the election of remedy bars further action against the principal. For instance, in *McDonald v. New World Life Ins. Co.*, 76 Wash. 488, 491, 136 P. 702 (1913), this court held that when the injured party chose to hold an agent responsible for damages, the election thereby discharged the principal. We reaffirmed this principle in *Chapman v. Ross,* 152 Wash. 262, 277 P. 854 (1929). In that case the court stated:

> If, on the other hand, appellant chose to extend credit to the agent, having full knowledge of the principal, he cannot thereafter resort to the principal, and the latter is not bound, although the agent acted in the course of his employment and for the benefit of the principal.
> He is thus bound, even though principal and agent are both liable, and a suit prosecuted to judgment against either, *although without satisfaction,* will discharge the

remedy against the other.

Cases cited by appellant upon the joint or severable suability of joint tort–feasors and cases involving cumulative remedies against one or more parties, who may be liable, as not binding the suitor by election, are not pertinent.

(Citations omitted. Italics ours.) *Chapman,* at 267–68.

The second proposition established by our case law is that a principal's liability may be discharged if the judgment in favor of the agent is on the merits. *See Vern J. Oja & Assocs. v. Washington Park Towers, Inc.,* 89 Wn.2d 72, 569 P.2d 1141 (1977). A dismissal based on a personal defense of the agent, however, does not dismiss the principal. *Vern J. Oja & Assocs. v. Washington Park Towers, Inc., supra.* This latter proposition is based on principles of res judicata and issue preclusion. *See* Restatement (Second) of Judgments § 51 (1982). Comment *b* to that section sets out the following rationale, at page 50:

In an important sense, however, there is only a single claim. The same loss is involved, usually the same measure of damages, and the same or nearly identical issues of fact and law. The substantive legal basis for vicarious responsibility rests largely on the notion that the injured person should have the additional security for recovery of his loss that is represented in imposition of liability on a person other than the primary obligor. The optional additional security thus afforded by rules of vicarious responsibility should not, however, afford the injured person a further option to litigate successively the issues upon which his claim to redress is founded.

On the other hand, a different situation arises when settlements rather than judgments are involved. The Restatement (Second) of Judgments § 51, comment *f* (1982) takes the position that a settlement *does not* ordinarily discharge the liability of the principal. That comment states, at page 54:

This rule applies when the obligation is reduced to judgment, and even though the liability of one obligor is derivative from another under principles of vicarious responsibility. Moreover, a judgment by consent, though

it terminates the claim to which it refers, is not an actual adjudication. The considerations that lead to denying issue preclusive effect to consent judgments, chiefly the encouragement of settlements, are applicable when an injured person has claims against more than one person for the same wrongful act. It is therefore appropriate to regard the claim against the primary obligor and the person vicariously responsible for his conduct as separate claims when one of them has been settled.

(Citations omitted.)

In *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 600 P.2d 1272 (1979), this court appeared to follow a similar rule. We held that a covenant not to sue received from the driver/agent did not release the claim against the owner/principal. *Finney* involved a claim under the injured party's uninsured motorist coverage. This court specifically refused to release the vicariously liable owner. Nonetheless, we do not agree with respondent Glover's contention that *Finney* controls here. Nothing in that case requires that a plaintiff be allowed to pursue a vicarious liability claim subsequent to entering into a reasonable settlement with the solvent defendants. Unlike the case here, *Finney* involved a situation where the settling defendant had tendered the entire liability limits of the automobile policy. Presumably this was the only asset of the settling defendant's estate. Also, *Finney* arose prior to the enactment of the contribution statute. We believe the last sentence of RCW 4.22.040(1) authorizes a different disposition of this case. That section states:

(1) A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm, whether or not judgment has been recovered against all or any of them. It may be enforced either in the original action or by a separate action brought for that purpose. The basis for contribution among liable persons is the comparative fault of each such person. *However, the court may determine that two or more persons are to be treated as a single person for purposes of contribution.*

(Italics ours.)

We believe this section allows a trial judge to discharge a principal when the agent and the injured party have entered into a settlement which the trial judge has approved as reasonable. Every factor that the trial judge should consider, except defendant's liability insurance limits, applies equally between the principal and agent. Thus, a determination that the settlement is reasonable is in effect an adjudication that the claim whether as to the agent or the principal has been satisfied.

Plaintiff Glover urges, however, that the Legislature's specific retention of joint and several liability prohibits extinguishment of the vicarious liability claim. Plaintiff's reliance on the concept of joint and several liability is misplaced. The joint and several liability doctrine allows the plaintiff to proceed against one or all joint tortfeasors to obtain a full recovery. *See Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 235, 588 P.2d 1308 (1978). This court described the underlying purpose of this doctrine as follows:

> The cornerstone of tort law is the assurance of full compensation to the injured party. To attain this goal, the procedural aspect of our rule permits the injured party to seek full recovery from any one or all of such tort–feasors. So long as each tort–feasor's conduct is found to have been *a* proximate cause of the *indivisible* harm, we can conceive of no reason for relieving that tort–feasor of his responsibility to make full compensation for all harm he has caused the injured party.

*Shoreline Concrete,* at 236.

This policy of full compensation is served when the plaintiff has multiple opportunities to satisfy one judgment. Once the plaintiff agrees to settle with a solvent agent for a reasonable amount, however, no principle of full compensation requires that she also be able to pursue a claim against the principal, since, presumably, she could have obtained full compensation from the agent. This situation is unlike that created by joint tortfeasor claims. When settling with one of a number of joint tortfeasors, the plaintiff may eval-

uate the relative conduct of each and determine that her best interests are served by a partial settlement. In such an instance, she might settle for less than the full amount of her damages. Various factors, such as the percentage of such joint tortfeasor's fault compared to the conduct of the nonsettling defendant, may influence this decision. In vicarious liability cases, on the other hand, the claim is based on the conduct of one individual and the liability is imposed as a matter of public policy to ensure that the plaintiff has the maximum opportunity to be fully compensated. When the plaintiff chooses to settle for less than the full amount, when that agent is solvent, the need to pursue the principal does not exist. Once she elects to pursue the agent, full recovery should be obtained from that agent.

Also, given a statutory scheme which extinguishes the nonsettling principal's right to contribution by that settlement, equity considerations weigh in favor of this result. The Tennessee Court of Appeals reached the same conclusion when the plaintiff extinguished subrogation rights in *McGee v. County of Wilson*, 574 S.W.2d 744 (Tenn. Ct. App. 1978). That court observed:

> In the present case, the injured parties have released and discharged their rights against the wrongdoer, Jerry D. Lee, Sr. Thereby plaintiffs have destroyed the rights of county to recover from Lee any amount paid by the county to plaintiffs.
> It would be unjust, inequitable and wrong to permit plaintiffs to recover from the county after destroying the county's right to reimbursement from the wrongdoer.
> This is doubtless the foundation of the rule that release of employee is a release of an innocent employer . . .

*McGee*, at 747.

The situation created by our contribution statute is analogous. Once the plaintiff settles for a reasonable amount, the contribution rights are extinguished.

Finally, as noted above, the majority of courts hold that a release or covenant not to sue as to an agent will release the principal. *See* Annot., 92 A.L.R.2d 533 (1963). Although a

contrary rule was suggested by this court in *Finney v. Farmers Ins. Co., supra,* we believe the rationale behind that rule, and therefore the rule, applies only when the plaintiff settles with an agent who is financially unable to fully compensate the plaintiff.[4]

 Our disposition of the vicarious liability claim makes it technically unnecessary to reach the issue of whether Tacoma General could have retained any contribution or indemnity claims against the settling defendants in their vicarious liability claims. Nonetheless, to assist the trial judge faced with similar arguments in other joint tortfeasor situations, we note that the statute requires dismissal of contribution claims. RCW 4.22.060(2) clearly states that the "release . . . entered into by a claimant and a person liable discharges that person from *all* liability for contribution". (Italics ours.) Also, RCW 4.22.040(3) provides that the common law right of indemnity between active and passive tortfeasors is abolished. These two sections, read together, form a comprehensive statutory scheme designed to allocate financial responsibility between defendants. Nothing cited by the parties suggests that this court should ignore these unambiguous statements by the Legislature. Furthermore, the result urged by Tacoma General—limited survival of contribution claims—would certainly chill the legislative goal of encouraging settlement. Thus, we conclude that in the absence of contractual arrangements between the defendants to the contrary, contribution and indemnity rights do not survive a settlement.

Finally, although this issue was not appealed, we observe that the trial judge properly denied the general motion for summary judgment.

---

[4]To the extent that our opinion in *Finney v. Farmers Inc. Co.,* 92 Wn.2d 748, 600 P.2d 1272 (1979) is inconsistent with this result, it is herein modified to include this limitation. Plaintiffs may protect their right to proceed against the principal in such cases by asking the judge to state on the record that full compensation was unlikely to be obtained from the settling defendant. This fact should be explicitly set out as having been considered in approving the settlement.

This case is remanded for action consistent with this opinion.

WILLIAMS, C.J., STAFFORD, UTTER, BRACHTENBACH, DOLLI-VER, DIMMICK, and PEARSON, JJ., and HENRY, J. Pro Tem., concur.

Reconsideration denied April 5, 1983.