[No. 53558-7-I.   Division One.   February 14, 2005.]

HEIKE WERLINGER, *Individually and as Parent and Guardian, Appellant,* v. MICHAEL WAYNE WARNER ET AL., *Respondents.*

*Martin D. Fox*, for appellant.

*Scott M. Collins* (of *Clarke, Bovingdon, Cole, Mills & Lether, P.C.*), for respondents.

¶1 BECKER, J. — When a defendant whose liability insurer has acted in bad faith proceeds to make his own settlement with an injured plaintiff, the amount of that settlement may become the presumptive measure of damage in the bad faith lawsuit, but only if a trial court determines that the settlement is reasonable. In this case, a defendant insured with limits of $25,000 obtained a discharge in bankruptcy for his liability for a terrible automobile accident, and then confessed judgment for $5 million as part of a settlement that assigned his bad faith claim to the injured plaintiff. The court found the $5 million settlement to be unreasonable because the settling defendant's discharge in bankruptcy was a complete defense and left him with no exposure. We conclude the defendant's bankruptcy was an appropriate factor to consider and the court did not abuse its discretion in finding the settlement unreasonable.

¶2 Respondent Michael Warner was driving his wife's car to work on February 15, 2001. Warner made a sudden left turn across motorcyclist Dean Werlinger's path, causing Werlinger's death. Werlinger was survived by his wife Heike and their three children.

¶3 Warner did not see Werlinger before making the fatal turn, and his liability was beyond dispute. Warner had an

insurance policy with Clarendon National Insurance Company with limits of $25,000. Within a few weeks of the accident, Heike Werlinger obtained counsel, who contacted Clarendon. Clarendon denied Warner's coverage on the basis that Warner's wife's car was not listed on the policy. Clarendon is the real party in interest in this appeal.

¶4 Warner had filed a chapter 13 bankruptcy proceeding sometime before the accident. He converted it to a chapter 7 on April 2, 2001. Werlinger obtained relief from the automatic bankruptcy stay in May 2001 for the "limited purpose" of pursuing Warner's automobile liability insurance coverage and any claim Warner might have against Clarendon for wrongful denial of coverage. Two weeks later, Clarendon's claim representative sent a letter informing Warner that Clarendon would defend him under a reservation of rights.

¶5 Warner was granted a discharge in bankruptcy in July, 2001. Shortly thereafter, Werlinger filed a wrongful death action against Warner. Clarendon filed a declaratory judgment seeking to establish that Warner's policy did not cover him at the time of the accident. In October, Werlinger demanded payment from Clarendon for the policy limit of $25,000. The letter demanded a response within 60 days. Clarendon did not respond or tender within that time period.

¶6 Clarendon moved for summary judgment on the issue of coverage in the declaratory judgment action in March 2002. Werlinger successfully defended Warner's interest in this action. The trial court found that Warner was entitled to coverage as a matter of law. Clarendon did not appeal this ruling.

¶7 Clarendon tendered the policy limits of $25,000 in June, 2002. Werlinger rejected the tender and proceeded with the wrongful death action against Warner.

¶8 Warner and Werlinger agreed to a settlement dated November 2002. In exchange for Warner's confession of judgment in the amount of $5 million, Werlinger agreed not

to hold Warner personally liable for the judgment. The confession of judgment acknowledged that the bankruptcy discharge released Warner from any personal liability resulting from the traffic accident, and that the bankruptcy court had awarded to Werlinger all causes of action related to Clarendon's allegedly wrongful denial of coverage. Werlinger anticipated using the wrongful death judgment against Warner to establish the presumptive measure of damages in the bad faith claim she intended to file against Clarendon, as contemplated by *Besel v. Viking Ins. Co.*, 146 Wn.2d 730, 49 P.3d 887 (2002). Werlinger agreed to present the settlement to the trial court in the wrongful death action for a determination of reasonableness under RCW 4.22.060.

¶9 Werlinger, as Warner's assignee, filed a bad faith lawsuit against Clarendon in May 2003. The theory of the lawsuit is that Clarendon acted in bad faith in its initial denial of coverage to Warner, in proceeding against Warner in the declaratory judgment action without providing him with counsel, in failing to bring the issue of coverage to a timely resolution, and in failing to make a timely response to Werlinger's policy limits demand letter.[1]

¶10 Werlinger moved for a determination that the covenant judgment of $5 million was reasonable, and gave notice to Clarendon.

¶11 In determining the reasonableness of a settlement agreement under RCW 4.22.060, the trial court weighs the factors identified in *Glover v. Tacoma General Hospital*, 98 Wn.2d 708, 658 P.2d 1230 (1983), *overruled on other grounds by Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988). These factors are:

> the releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's

---

[1] That lawsuit was dismissed on summary judgment on August 25, 2004. An appeal, No. 55009-8-I, is presently pending in this court.

ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.

*Glover*, 98 Wn.2d at 717. The *Glover* factors are also appropriate when determining the reasonableness of a settlement in the context of a covenant judgment. *Chaussee v. Md. Cas. Co.*, 60 Wn. App. 504, 803 P.2d 1339 (1991).

¶12 At the hearing below on Werlinger's motion to approve the $5 million settlement as reasonable, both Werlinger and Clarendon briefed the court on the applicable law and the *Glover* factors. The court denied the motion:

IT IS HEREBY ORDERED as follows:

1. That plaintiffs' motion for determination of reasonableness of settlement pursuant to RCW 4.22 is hereby denied;

2. This Court will enter a judgment against defendants Michael Wayne Warner and Tara Lee Warner in the amount of $25,000, which has previously been paid by defendants Warner through their insurer Clarendon National Insurance Company; and

3. Any attempt to enter into a settlement in excess of the available policy limits is inherently unreasonable in that pursuant to the bankruptcy court's order of July 11, 2001, Michael Wayne Warner and Tara Lee Warner were granted a discharge of the debt at issue.[2]

Werlinger appeals.

¶13 Clarendon initially contends, relying on RAP 2.2(a)(1), that the order is not properly before us because it is not a final judgment appealable as a matter of right. We find, however, that the order is appealable under RAP 2.2(a)(3). This rule provides for review of "[a]ny written decision affecting a substantial right in a civil case which in effect determines the action and prevents a final judgment or discontinues the action." RAP 2.2(a)(3). The trial court stated that it would not enter judgment in excess of $25,000. This order determined the action because the only

---

[2] Clerk's Papers at 405.

point of the proceeding from Werlinger's point of view was to get a judgment in excess of $25,000. In these circumstances, entry of a final judgment for $25,000 was not necessary to make the order appealable.

¶14 According to Werlinger, the trial court erroneously determined that a reasonableness hearing under RCW 4.22.060 can be held only in a situation involving multiple defendants and that an insurance company is exonerated from a bad faith claim if its insured is in bankruptcy.

¶15 During the hearing the trial court expressed some skepticism that a reasonableness hearing under RCW 4.22.060 was appropriate in a case without multiple defendants but ultimately accepted the representation by both Werlinger and Clarendon that case law made the statute applicable.[3] The court also expressed doubt that bankruptcy law would permit entry of a judgment against a discharged debtor. However, Werlinger presented a recent order from the bankruptcy court clarifying that the discharge order did not prevent Werlinger from obtaining a judgment against Warner "in any amount" for the limited purpose of pursuing the insurance claim and bad faith claim against Clarendon.[4] The bankruptcy court's order stated: "the debtors' assignment of the bad faith cause of action and related confessed judgment remain valid, but nothing in this order, the assignment or the confessed judgment shall be deemed to allow any collection efforts on account of the pre-petition debt."[5] Werlinger also cited a recent appellate decision holding that so long as no collection efforts will be made against the debtor, a plaintiff may proceed against the debtor solely to recover from the debtor's insurer and does not need the bankruptcy court's permission to do so. *Arreygue v. Lutz*, 116 Wn. App. 938, 69 P.3d 881 (2003). The trial court ultimately recognized that the bankruptcy court's order was "the law of this case . . . so

---

[3] Clerk's Papers at 379 (Tr. of Reasonableness H'rg Sept. 29, 2003).

[4] Clerk's Papers at 221-22.

[5] Clerk's Papers at 222.

I guess I can do that [enter a judgment against a discharged debtor]."[6] We therefore reject Werlinger's argument that the trial court was misinformed about the applicable law.

¶16 The amount of a covenant judgment will become the presumptive measure of an insured's harm in a bad faith action against the insurer only if the covenant judgment is reasonable under the *Glover/Chaussee* factors. *Besel*, 146 Wn.2d at 738. On the merits, Werlinger asserts that she proved the reasonableness of the settlement under the *Glover* factors, claims that Clarendon admitted the reasonableness of the amount sought by Werlinger and thus concludes the trial court lacked a tenable basis for refusing to enter a judgment against Warner for $5 million.

¶17 Contrary to Werlinger's assertion, Clarendon did not admit that the amount of the settlement was reasonable. Clarendon, in responding to Werlinger's earlier motion for a determination of reasonableness (which was denied without prejudice), conceded only that Werlinger had suffered enormous damage and had a very strong theory of liability against Warner.[7] Clarendon consistently argued that the proposed settlement was unreasonable in light of Warner's lack of exposure due to his discharge in bankruptcy.

¶18 In determining the reasonableness of a settlement, the trial court "must have discretion to weigh each case individually." *Glover*, 98 Wn.2d at 718. We review the determination for abuse of discretion.

¶19 Werlinger maintains the settlement was reasonable because she would certainly prevail at a trial on the issue of Warner's liability, and her claimed damages are within the expected range of a jury verdict in a wrongful death case where the beneficiaries are a widow with three dependent children. She contends that when the damages stipulated in a covenant judgment are reasonable, the judgment is presumptively valid and Clarendon cannot attack it except by showing fraud or collusion. For this proposition, she cites

[6] Clerk's Papers at 380.

[7] Clerk's Papers at 128.

*Truck Insurance Exchange v. Vanport Homes, Inc.*, 147 Wn.2d 751, 58 P.3d 276 (2002).

¶20 The holding of *Truck Insurance Exchange,* an application of *Besel,* is not as broad as Werlinger represents. The insurer in that case refused to defend its insured, Vanport, a building construction-consulting firm, against lawsuits filed by the firm's customers. The customers claimed property damages amounting to nearly $490,000. Vanport settled for that amount, and then successfully sued the insurer for coverage and bad faith in refusing to defend. Because of the insurer's wrongful refusal to defend, the trial court found the settlements to be per se reasonable without taking into consideration the *Glover/Chaussee* factors. The judgment entered by the trial court imposed the entire cost of the settlement upon the insurer along with Vanport's costs and attorney fees. The Supreme Court affirmed the determination that the settlements were reasonable per se:

> An insurer faced with claims exceeding its policy limit should not be permitted to do nothing in the hope that the insured will go out of business and the claims will simply go away. . . . We therefore hold that when an insurer wrongfully refuses to defend, it has voluntarily forfeited its ability to protect itself against an unfavorable settlement, unless the settlement is the product of fraud or collusion.

*Truck Ins. Exch.*, 147 Wn.2d at 765-66.

¶21 The court's discussion indicates that a covenant judgment can be reasonable per se only in a case where an insurer breaches its duty to defend or otherwise wrongfully "exposes its insured to business failure and bankruptcy." *Truck Ins. Exch.*, 147 Wn.2d at 765. The present case is not one in which the insurer refused to defend, nor did the insurer's allegedly wrongful conduct play any role in causing Warner's bankruptcy. Therefore, the trial court was obliged to measure the settlement for reasonableness using the *Glover/Chaussee* factors, as contemplated in *Besel,* and keeping in mind that that the sole purpose of the covenant

judgment was to serve as the presumptive measure of damages in a separate bad faith lawsuit.

¶22 As the trial court saw it, the fact that the Warners had been granted a discharge in bankruptcy of their personal liability to Werlinger made it unreasonable for them to settle for any amount in excess of the available policy limits. By virtue of the bankruptcy discharge, Warner had a complete defense to personal liability. *Besel* recognizes that the reasonableness of a settlement with an insured who is not personally liable for a settlement is open to question because the insured will have no incentive to minimize the amount. *Besel*, 146 Wn.2d at 737-38.

¶23 Werlinger argues that the trial court gave undue weight to Warner's discharge in bankruptcy, despite the admonition in *Glover* that "no one factor should control." We cannot conclude that the court failed to weigh the *Glover* factors, given the extensive briefing and argument by both parties. All of the *Glover* factors are not necessarily relevant in every case. *Besel*, 146 Wn.2d at 739 n.2. The court was well aware that Werlinger had a very strong case against Warner on liability and damages but reasonably concluded these factors were not relevant in view of the fact that not a penny could ever be collected from Warner personally. And the interest of the insurer, as a third party affected by the settlement, was another *Glover* factor weighing against a determination that the amount was reasonable. It would be prejudicial to Clarendon to approve a $5 million judgment as reasonable when Clarendon did defend and did nothing to push Warner into bankruptcy.

¶24 Werlinger contends the disapproval of the settlement is bad policy because it sends a signal to insurers that they need not defend their insureds against liability that has already been discharged in bankruptcy. That is not this case. It bears repeating that Clarendon did defend Warner, and we express no opinion as to whether this result would be affirmable if that had not been so.

¶25 We conclude the trial court did not abuse its discretion in entering the order that denied Werlinger's motion

for approval of the settlement as reasonable. In the event that the bad faith claim against Clarendon is found to be viable, this decision does not preclude Werlinger from proving Warner's damages in the ordinary way. *See Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 333, 2 P.3d 1029 (2000).

¶26 The order is affirmed. The case is remanded to the trial court for any further proceedings that may be necessary to assure that Werlinger receives the $25,000 policy limits.

ELLINGTON, A.C.J., and BAKER, J., concur.

Review denied at 155 Wn.2d 1025 (2005).