IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE RECALL OF:<br>KEITH CLARK,<br>Central Valley School Board Member. | )<br>)<br>)<br>)<br>) | No. 39862-5-III<br>(consolidated with |
| IN THE MATTER OF THE RECALL OF:<br>CYNTHIA MCMULLEN,<br>Central Valley School Board Member. | )<br>)<br>)<br>)<br>) | No. 39863-3-III |
| IN THE MATTER OF THE RECALL OF:<br>DEBRA L. LONG,<br>Central Valley School Board Member. | )<br>)<br>)<br>)<br>) | No. 39864-1-III)<br><br>UNPUBLISHED OPINION |

LAWRENCE-BERREY, C.J. — Robert Linebarger filed separate recall petitions against three Central Valley School District (the District) school board members: Keith Clark, Debra Long, and Cynthia McMullen (collectively, the three board members). The superior court found that the allegations in the petitions were not well grounded in facts, were intentionally frivolous, and were made for the improper purpose of bullying the three board members into taking a political position contrary to the law. The court dismissed the petitions with prejudice, but retained jurisdiction to consider the issue of sanctions.

Later, the trial court entered orders imposing a total of $30,000 in CR 11 sanctions jointly and severally against Linebarger and his two former attorneys. Linebarger did not appeal those orders.

Months later, the three board members entered into a settlement agreement with Linebarger's two former attorneys for each to pay $1,000 and extinguish their liability for the remainder. On the three board members' motion to approve the settlement agreement, the court determined that a reasonable apportionment of the sanctions was $1,000 for the first attorney and $6,500 for the second, and therefore partially granted the motion. The court entered an order concluding that apportioning the remaining $22,500 to Linebarger was reasonable as a deterrent because he bore the greatest responsibility for initiating the improper recall petitions.

Linebarger appeals from the trial court's orders awarding CR 11 sanctions and also the order, entered months later, apportioning him $22,500 in sanctions. He argues the court (1) erred by finding there was no constitutional right to recall, (2) erred by finding bad faith when the petitions were merely legally and factually insufficient, (3) abused its discretion by imposing sanctions, and (4) abused its discretion in apportioning sanctions. The three board members contend Linebarger may raise only the last issue because he failed to properly appeal the sanctions orders.

We agree that Linebarger failed to timely appeal the orders awarding CR 11 sanctions, so his appeal is limited to the order apportioning sanctions. We conclude that the trial court did not abuse its discretion in apportioning sanctions, but deny the three board members their requested attorney fees on appeal.

FACTS

Before we discuss the facts and procedural history of the underlying recall petitions, it is necessary to provide background on the COVID-19 pandemic and our state government's response.

In February 2020, Governor Jay Inslee proclaimed a state of emergency for all counties in Washington State due to the outbreak of the COVID-19 virus. One month later, the Governor issued a proclamation prohibiting schools statewide from conducting in-person educational, recreational, and other programs using school facilities. The Governor later extended the prohibition to last through the end of the 2019-2020 school year.

In June 2020, the Governor issued a proclamation allowing schools to reopen for the 2020-2021 school year, provided they follow health and safety guidance issued by the Washington State Department of Health (WSDH). During the 2020-2021 school year, the Governor also issued various orders and proclamations related to schools. Among

those, the Governor ordered schools to provide in-person education while adhering to the WSDH guidelines related to masking, vaccination, social distancing, and quarantining.

In July 2021, prior to the 2021-2022 school year, the District's superintendent and board of directors, including the three school board members, received a letter from the State's superintendent of public instruction, warning them that the masking mandates "are not at the discretion of local boards or local superintendents" and that failure to follow them "will jeopardize school budgets." Clerk's Papers (CP) at 310. The letter continued:

> Local community members will always have the right to bring their grievances to their elected leaders, but in the case of these public health measures, they are not local decisions. Local boards of directors have broad discretion on the details of instructional delivery. They are not empowered, however, to override the legal authority of public health officers or the Governor in times of a public health emergency.
>
> Community actions that result in board actions that violate the law, including executive orders, will jeopardize school budgets, local school personnel, and ultimately the opening of school to in-person learning this fall and beyond.
>
> Individuals who violate the mask orders, or other layered mitigation strategies, not only carry individual legal risks, but they also risk cases and outbreaks in school that will warrant quarantines, school building closures, and disruptions in high-quality in-person learning.

CP at 310.

4

The day after this letter was received, the Governor issued a proclamation prohibiting school districts from offering in-person education unless they complied with the WSDH's requirements for K-12 schools, the Office of Superintendent of Public Instruction's (OSPI) COVID-19 guidance, and the Department of Labor and Industries' requirements and guidance.

In August 2021, the Governor issued a proclamation requiring public school employees to receive an authorized COVID-19 vaccination. The proclamation allowed exemptions for disability-related accommodations and sincerely held religious beliefs.

Later that month, the Superintendent of Public Instruction sent another letter reminding state public school district superintendents and boards that OSPI "intended to withhold funds from school districts who willfully fail to comply with a health and safety measure" required by the Governor. CP at 341. The letter outlined the process OSPI would follow in the event a school district willfully failed to comply with the mask and vaccination requirements. The letter ended by reiterating that the mask and vaccination requirements "are **not at the discretion of local school boards or superintendents**." CP at 342.

*The District complies with the proclamations and the board takes no action*

Ahead of the 2021-2022 school year, during an August 9 school board meeting, the District's superintendent informed the school board that masks would be required for

5

all staff, students, and visitors pursuant to WSDH's requirements for K-12 schools and the Washington State Secretary of Health's order. The board did not take any action or adopt any policies regarding masks during this meeting.

On August 25, during another school board meeting, the District's superintendent presented the board with his plan for reopening schools and discussed the measures the District was taking to mitigate the spread of COVID-19. The District's superintendent also informed the board that he would support District staff in complying with the state vaccination mandate and that all staff would be offered medical or religious exemptions. The board did not take any action or adopt any policies regarding vaccinations during that meeting.

*Linebarger builds support for recalling the three school board members*

During the summer before the 2021-2022 school year, Linebarger was running for a seat on the District's school board. On August 4, 2021, the *Spokesman-Review* published an article about the primary race results explaining that both Linebarger and Pam Orebaugh advanced to the general election, and both "oppose any recommendations from the Centers for Disease Control and Prevention for any pandemic-related masking or vaccination requirements in k-12 schools." CP at 536. The article quoted Linebarger calling COVID-19 "'a big phony hoax.'" CP at 536.

On August 12, prior to a parent group meeting, Linebarger and Orebaugh met with school board member Long to discuss the mask and vaccine mandates. During this meeting, Linebarger asked Long if she would be willing to push back on the mask mandate. Long declined, explaining that the District could lose state funding if it disobeyed the mandates. After the meeting, Linebarger and Orebaugh discussed the need for a legal remedy and shared this information with a parent group that opposed vaccines and facemasks. The following week, Linebarger and the parent group met with counsel to discuss the possibility of filing recall petitions against District board members.

Around this time, Linebarger filed articles of incorporation with the Washington Office of the Secretary of State forming a nonprofit organization named Washington Citizens for Liberty (WCL). In an e-mail to a parent, Linebarger explained that the purpose of the WCL was "to raise money for lawsuits to challenge the unconstitutional mandates, requirements, etc." CP at 1192.

On August 26, Orebaugh e-mailed WCL members with updates on the group's strategy and plan. Relevant to the recall petitions, she explained:

> The district and the board will not stand against the mandates. I honestly agree that the state would pull funding—but that would create an insane mess since the kids still need to be educated. We need to change how we are fighting this. Putting data at the board and asking them to stand is not working. We are moving onto other methods. Including a recall. Petitions hopefully coming soon.

CP at 1197.

That day, Linebarger claimed in an online post that Long had lied about her

address and residency in the District:

> Scandal brewing in [Central Valley School District] #3. School Board
> Member may have listed an address that she doesn't actually live in.
> Rumor has it she actually resides in the [East Valley] school district. This
> is fraud if true. Is there somebody from this group who would be interested
> in filling this spot if true???

CP at 1219.

On September 1, Linebarger sent an e-mail to WCL members updating them on

the plan to recall three targets: Long, Clark, and McMullen. He articulated his strategy to

write a demand letter:

> Strategy—write a demand letter to the Board and District demanding they
> honor the "citizen's voice" and refuse to obey the mask mandate. Get a
> reply from the Board/District and that response can be justification for the
> recall. Chain of events, one supports the other.

CP at 1186.

Around two hours later, Linebarger e-mailed a demand letter to the District's

superintendent and board. In it, he wrote:

> I am writing to voice my objection to your support of the Governor's
> vaccine mandate. . . . Nowhere in their contract does it say the employee
> can be compelled, coerced or required to waive their individual rights to
> privacy and medical freedom. If we don't take a stand and refuse to
> comply with the unlawful vaccine mandate, what's next? Neverending
> [sic] injections? Forced organ or blood donations? Mandatory sterilization

or birth control?  Where do you draw the line.  Nobody, including an employer and certainly not petty elected and unelected officials, have the right to do this and I demand the School District take a stand and publicly denounce this order that clearly violates the right of every employee in the District. . . .

CP at 529.

On September 11, Linebarger asked WCL members for candidates from the group to fill the three board positions targeted by the recall petitions.

*Linebarger files the recall petitions*

On September 24, Linebarger filed recall petitions with the Spokane County Auditor against the three board members.  He and his two attorneys signed the statements of charges.  The statements of charges included nearly identical allegations against each of the three board members.  The statements alleged in part:

- The three school board members committed acts of misfeasance, specifically misuse of power and wrongful use of lawful authority in the exercise of their office because they mandated the use of facemasks and required District employees to be vaccinated against COVID-19.

- The three school board members committed acts of misfeasance, specifically misuse of power and wrongful use of lawful authority in the exercise of their office because they agreed to execute the Governor's vaccination mandate.

- The three school board members violated their oaths of office by acting contrary to the wishes and direction of the majority of their constituents.

*See* CP 6-9, 1573-76, 2555-57.

9

Linebarger also alleged that Long committed an act of malfeasance by using a false address and not meeting the residency requirements because she lived at an address outside the District. Linebarger further alleged that Clark and McMullen potentially had knowledge of Long's deceit about her residency.

*Superior court recall petition procedure*

The Spokane County Prosecutor's Office filed three actions in Spokane County Superior Court to determine the sufficiency of the charges in each of the recall petitions. The three board members filed briefs opposing the recall petitions. They contended the charges were factually and legally insufficient and requested the court dismiss the petitions. The next day, the three board members filed motions for CR 11 sanctions against Linebarger and his attorneys for filing baseless petitions for an improper purpose.

The superior court held a hearing to determine the sufficiency of the charges in the three recall petitions. In December 2021 orders, the court concluded that the charges outlined above were legally and factually insufficient, and dismissed the petitions with prejudice. The orders expressly stated that the court retained jurisdiction to consider the three board members' motions for sanctions.

In June 2022, after a hearing, the court entered orders in each of the three cases granting the three board members' motions, concluding that CR 11 sanctions were warranted. The orders contained extensive findings and conclusions that Linebarger's

10

charges were not well grounded in fact, not based on a sufficient inquiry into the facts, not warranted by existing law, intentionally frivolous, filed for an improper purpose, and filed in bad faith. With respect to improper purpose, the court found that Linebarger filed the petitions "for the improper purpose of bullying the Board Members into taking a political position contrary to the law." CP at 94 (Long), 2360 (McMullen), 3346 (Clark). Linebarger did not appeal the June 2022 orders.

In December 2022, the court issued orders in each of the three cases awarding a total of $30,000 in sanctions in favor of the three board members against Linebarger and his two attorneys.[1] The court imposed the sanctions as joint and several obligations. The court also entered a memorandum decision explaining its decision to impose the monetary sanction instead of attorney fees. Linebarger did not appeal the December 2022 orders.

In January 2023, Linebarger, represented by new counsel, filed a motion to vacate the orders imposing sanctions. The court held a hearing on the motion and later entered a written order denying it.

---

[1] The three board members had asked for an award of $167,671, which was the total attorneys' fees the District had incurred by that time.

11

*The three school board members settle with Linebarger's two former attorneys*

In May 2023, the three board members filed a notice of their intent to enter a settlement agreement with Linebarger's two former attorneys to apportion their share of the $30,000 sanctions. As part of the proposed settlement agreement, each agreed to pay $1,000, which would discharge them from liability for the remaining $28,000 in sanctions. The three board members asked the court to approve the proposed settlement.

The court held a hearing on the motion. Following argument by counsel, the court orally approved the proposed settlement as to one attorney, but stated that the second attorney bore more responsibility than the proposed $1,000 because of "dilatory behavior," "late filings," and a failure to screen the petitions. Report of Proceedings (RP) (June 9, 2023) at 25. The court ruled that $6,500 was a reasonable apportionment for the second attorney and that the remaining $22,500 was a reasonable apportionment for Linebarger. The court noted that Linebarger bore the bulk of responsibility for the sanctions because "he was the one that started this ball and brought that information to counsel." RP (June 9, 2023) at 26.

In June 2023, the court entered orders in each of the three cases consistent with its oral rulings. Linebarger timely appealed the June 2023 orders, and designated and attached a copy only of those orders to his notices of appeal.

No. 39862-5-III (consolidated with No. 39863-3-III; No. 39864-1-III)
*In re Recall of Clark*

ANALYSIS

A.     LINEBARGER'S FAILURE TO APPEAL THE ORDERS AWARDING SANCTIONS

As a threshold issue, the three board members contend we cannot review the

June 2022 and December 2022 orders awarding sanctions because Linebarger did not

properly appeal them. They contend Linebarger's appeal of the June 2023 orders

apportioning sanctions did not bring up the two sets of previous orders. We agree.

Among other things, a notice of appeal must "designate the decision or part of

decision which the party wants reviewed." RAP 5.3(a). However, subject to one

exception discussed below, we will review a trial court's decision entered before review

is accepted if that decision prejudicially affects the designated decision. RAP 2.4(b).

Here, the trial court's June 2022 and December 2022 sanctions orders were entered

before we accepted review and those orders prejudicially affect the June 2023 orders

apportioning sanctions. Specifically, if the orders awarding sanctions were entered

contrary to law, then there would be no sanctions award to apportion.

The exception, mentioned above, provides:

> A timely notice of appeal of a trial court decision *relating to attorney fees and costs* does not bring up for review a decision previously entered in the action that is *otherwise appealable under* [*RAP*] *2.2(a)* unless a timely notice of appeal has been filed to seek review of the previous decision.

RAP 2.4(b) (emphasis added).

13

Here, each of the June 2023 orders apportioning sanctions is a decision "relating to attorney fees and costs." Thus, the resolution of this issue depends on whether the June 2022 and December 2022 sanctions orders are "appealable under [RAP] 2.2(a)."

RAP 2.2(a) sets forth the types of decisions and orders that are subject to appeal as of right, rather than as of discretion. We note that the sanctions orders were not reduced to a judgment.

Our review of RAP 2.2(a) convinces us that the most likely subsection that applies is RAP 2.2(a)(3), "*Decision Determining Action*." RAP 2.2(a)(3) permits an appeal of "[1] [a]ny written decision affecting a substantial right in a civil case [2] that in effect determines the action and [a] prevents a final judgment or [b] discontinues the action."

Here, the December 2021 orders dismissed the three recall petitions with prejudice, but retained jurisdiction to consider an award of sanctions. The June 2022 orders provided the findings and conclusions for imposing CR 11 sanctions, but did not determine the amount of the sanctions award. The December 2022 orders determined the amount of sanctions. The combination of these three orders (1) affected a substantial right in the civil case, i.e., dismissed the recall petitions with prejudice and determined the amount of sanctions, (2) in effect determined the action, and (2)(b) discontinued it. Thus, after the December 2022 orders were entered, the sanctions orders were appealable under RAP 2.2(a). We conclude that the RAP 2.4(b) exception quoted above applies, and

Linebarger's timely appeal of the June 2023 orders apportioning sanctions did not bring up the June 2022 or the December 2022 orders. Our review is accordingly limited.

B.      APPORTIONMENT OF SANCTIONS

Linebarger contends the superior court's apportionment of sanctions is not supported by the record and was made for untenable reasons. We disagree.

*Joint and several contribution settlement standards*

A right of contribution exists between or among two or more persons who are jointly and severally liable on the same indivisible claim for the same harm, whether or not judgment has been recovered against all or any of them. RCW 4.22.040(1). However, if a liable person settles with the claimant and the trial court determines that the settlement is reasonable, then the settlement discharges the liable person from all liability for contribution. RCW 4.22.060(2).

In *Glover v. Tacoma General Hospital*, 98 Wn.2d 708, 717-18, 658 P.2d 1230 (1983), our Supreme Court set out nine nonexclusive factors courts should consider when determining whether a settlement is reasonable under RCW 4.22.060:

> "[T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released."

15

The court noted that to aid appellate review, "trial judges should enunciate those factors which lead them to conclude that a settlement is reasonable." *Id.* at 718.

The superior court's findings of reasonableness under RCW 4.22.060 necessarily involve factual determinations that will not be disturbed on appeal if they are supported by substantial evidence. *Id.*; *Bird v. Best Plumbing Grp., LLC*, 175 Wn.2d 756, 774-75, 287 P.3d 551 (2012).

We review a superior court's determination regarding whether a settlement is reasonable under RCW 4.22.060 for an abuse of discretion. *See Bird*, 175 Wn.2d at 774-75. Abuse of discretion means the decision is manifestly unreasonable or is based on untenable grounds or untenable reasons. *Id.*

Here, the three board members entered into a proposed settlement agreement with Linebarger's two former attorneys pursuant to RCW 4.22.060. The superior court held a hearing on the proposed settlement agreement to determine its reasonableness. The parties briefed the *Glover* factors in advance of the hearing. During the hearing, Linebarger argued that the second attorney bore the most responsibility for the petitions and should therefore bear more responsibility than $1,000. During the hearing, Linebarger stated he did not object to the first attorney's $1,000 settlement.

The superior court orally reviewed the *Glover* factors and explained that it relied primarily on factor four, the released person's relative fault, when making its decision.

16

The court ruled that the proposed settlement with the first attorney was reasonable. However, the court credited Linebarger's argument and determined that the second attorney bore more responsibility than the proposed $1,000 settlement because of his dilatory behavior, late filings, and failure to screen the petitions. The court ruled that $6,500 was a reasonable apportionment of the sanctions for that attorney, and that the remaining $22,500 was a reasonable apportionment to Linebarger. The court noted that Linebarger bore the bulk of responsibility for the sanctions because "he was the one that started this ball and brought that information to counsel." RP (June 9, 2023) at 26.

On appeal, Linebarger argues that the superior court and opposing counsel blamed *both* of his former attorneys for the amount of fees incurred, and, therefore, the court should have apportioned more of the sanctions to both. We are not persuaded by this argument.

First, CR 11 is not a fee-shifting rule; rather, its purpose is to deter improper filings. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219-20, 829 P.2d 1099 (1992). Second, Linebarger argued below, and the trial court agreed, that the second attorney was more culpable than the first. Third, as discussed below, substantial evidence supports the trial court's apportionment to Linebarger of most of the sanctions because Linebarger started the recall petitions to bully the three board members to take a legal position contrary to law and brought the factually deficient information to counsel.

17

After Linebarger met with board member Long and she refused to push back on the mask mandates, Linebarger discussed the possibility of legal action and met with an attorney to discuss the recall petition process. He set up a nonprofit corporation to raise money for lawsuits challenging the mask mandates and vaccination requirements. He identified the particular targets for the recall petitions and solicited replacement candidates. He e-mailed a demand letter to the District's superintendent and school board to coax a response that would justify the filing of the recall petitions. He told the parent group about the rumor that Long was lying about her district residency. All considered, substantial evidence supports the superior court's finding that Linebarger was mostly to blame for filing the improper recall petitions. We conclude the trial court did not abuse its discretion in apportioning CR 11 sanctions.[2]

ATTORNEY FEES ON APPEAL

The three board members request their reasonable attorney fees incurred on appeal because Linebarger filed the recall petitions in bad faith. We deny their request.

First, CR 11 is not a fee-shifting rule. *Bryant*, 119 Wn.2d at 219-20. Simply because the three board members incurred attorney fees on appeal does not warrant our

---

[2] Linebarger also argues he relied on the advice of counsel prior to filing the petitions. We express no opinion whether Linebarger has any viable claims against his former attorneys. His attorneys are not parties to this case. The resolution of the issues in this appeal do not impact these nonparty claims.

shifting those fees to Linebarger. Second, the trial court determined that $22,500 in sanctions was appropriate to deter Linebarger from improper filings. We see no reason to impose additional sanctions. Had his arguments on appeal been frivolous, our decision might be different.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Staab, J.

Cooney, J.