[No. 56469-2-I.   Division One.   September 25, 2006.]

ERNEST COULTER ET AL., *Appellants*, v. ASTEN GROUP, INC., *Respondent*.

614

*Philip A. Talmadge* (of *Talmadge Law Group, P.L.L.C.*) and *Scott A. Niebling* and *Zachary B. Herschensohn* (of *Brayton Purcell*) (*Lloyd F. Leroy*, of counsel), for appellants.

*Fredric Tausend, G. William Shaw, Matthew J. Segal, Michael K. Ryan*, and *Sarah C. Johnson* (of *Preston Gates & Ellis, L.L.P.*), for respondent.

¶1 COLEMAN, J. — Appellants Ernest and Lerose Coulter incurred $242,500 in damages as a result of Ernest Coulter's long-term exposure to asbestos. A jury apportioned 2 percent of the fault to Ernest Coulter, 5 percent of the fault to respondent Asten Group, Inc., and 93 percent of the fault to suppliers of asbestos products that were not before the court. The trial court declined to hold Asten jointly and severally liable and instead entered judgment against Asten for $12,125. The Coulters appeal, and Asten cross-appeals.

¶2 Under an exception to Washington's 1986 tort reform act, joint and several liability applies to the Coulters' asbestos-related claims. We reject Asten's arguments that Coulter's contributory negligence was a total bar to recovery and that inaccurate jury instructions require a retrial. Accordingly, we reverse the award of damages and remand solely for recalculation of the judgment in accordance with this opinion.

## FACTS

¶3 Ernest Coulter is a retired laborer who worked at the Port Townsend Paper Mill from 1951 to 1992. In 2001, the Coulters filed this action against numerous manufacturers, suppliers, and distributors of asbestos-containing products used at the mill, alleging that he contracted asbestosis as a result of exposure to asbestos from these products. When trial commenced, Asten remained as the sole defendant.

¶4 From 1962 to 1974, Asten supplied 28 asbestos-containing "dryer felts" to the mill. Dryer felts were used to remove moisture from the paper as it moved through the manufacturing process. Coulter, who worked in various areas of the mill, was exposed to Asten's asbestos-containing dryer felts on a number of occasions, and asbestos from Asten products remained in the work environment well after 1974. The evidence also established that Coulter was exposed to other asbestos-containing products during his career and that he was a heavy smoker until well into his adulthood.

¶5 After extensive discussions between the parties and the court about the law that should apply during the lengthy period of Coulter's exposure to asbestos and how to deal with asbestos suppliers who were not before the court, the case was submitted to the jury with a special verdict form containing a three-part inquiry. In addition to determining the total amount of the Coulters' damages, the form instructed the jury to determine the percentage of Coulter's comparative fault, the percentage of Asten's fault, and the percentage of fault attributable to "[a]ll other suppliers of asbestos-containing products to the mill."[1] Counsel for the Coulters noted that in the case of a plaintiffs' verdict, the

---

[1] The special verdict form instructed the jury on this issue as follows:

Assume that 100% represents the total combined fault that proximately caused the plaintiff's asbestos-related injury. What percentage of this 100% is attributable to the plaintiff's negligence, if any, what percentage of this 100% is attributable to the not reasonably safe defendant's products and/or the defendant's negligence, and what percentage of this 100% is attributable to each entity, if any, whose negligence was found by you in Question No. 7 to have been a proximate cause of the injury to the plaintiff? Your total must equal 100%.

three-line verdict form would allow an appellate court to review Asten's choice of law arguments without having to order a new trial.

¶6 The jury found that the Coulters incurred total damages of $242,500 and that Asten was liable. In response to the special verdict form, the jury assigned 2 percent of the total combined fault to Ernest Coulter, 5 percent to Asten, and 93 percent to all other suppliers of asbestos-containing products.

¶7 Following the verdict, the court considered extensive argument from the parties as to the amount of the judgment. The Coulters proposed a money judgment of $215,716.50, an amount based on total damages less 2 percent for Coulter's contributory negligence and a setoff for prior settlements actually received from other parties. The trial court rejected the Coulters' proposal and agreed with Asten, entering a judgment against Asten for $12,125, an amount equal to 5 percent of the total damages incurred by the Coulters.

¶8 The Coulters moved to alter the judgment under CR 59(h), arguing that any judgment was subject to joint and several liability. The trial court denied the motion, noting that the case had been submitted to the jury "on agreed instructions and an agreed verdict form calling for damages liability to be apportioned."

¶9 Both the Coulters and Asten now appeal.

## ANALYSIS

### The Coulters' Appeal

¶10 We begin our analysis with the Coulters' contention that the trial court erred by declining to impose joint and several liability on Asten and entering judgment only in proportion to Asten's own fault. We agree with the Coulters that under *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 771 P.2d 711, 780 P.2d 260 (1989), claims based on asbestos exposure fall within the "hazardous substances" exception to the 1986 tort reform act and that joint and several liability therefore applies.

¶11 Prior to the 1986 tort reform act, Washington's common law imposed joint and several liability on multiple tortfeasors when they caused a plaintiff indivisible injury. *Kottler v. State*, 136 Wn.2d 437, 442, 963 P.2d 834 (1998). "In such cases the injured plaintiff could seek full compensation from any joint tortfeasor." *Kottler*, 136 Wn.2d at 442. As part of the 1986 tort reform act, the legislature abolished joint and several liability for most causes of action in favor of proportionate damages. *Kottler*, 136 Wn.2d at 443 (citing Laws of 1986, ch. 305). Accordingly, RCW 4.22.070 now provides for a regime of proportionate damages and limits joint and several liability to certain explicitly listed exceptions. In addition, RCW 4.22.070(3)(a) excludes entirely from the general rule of proportionate damages "any cause of action relating to hazardous wastes or substances or solid waste disposal sites." *See Kottler*, 136 Wn.2d at 444-45.

¶12 In *Sofie*, the plaintiff sued various asbestos manufacturers for damages arising from exposure to asbestos during his career as a pipe fitter. Following the verdict, Sofie appealed the trial court's reduction of the jury's award of noneconomic damages, and the asbestos manufacturers cross-appealed the trial court's decision to apply joint and several liability rather than proportionate liability. *Sofie*, 112 Wn.2d at 666.

¶13 In their cross appeal, the asbestos manufacturers maintained that the hazardous substance exception in RCW 4.22.070(3)(a) applied only to cases involving hazardous waste and environmental pollution. *Sofie*, 112 Wn.2d at 667-68. In rejecting this argument, the *Sofie* court concluded that both legislative history and the plain language of the statute supported the superior court's treatment of asbestos as a hazardous substance within the meaning of RCW 4.22.070(3)(a):

> Respondents' reliance on legislative history only appears to show that the Legislature intended a broader application for RCW 4.22.070(3)(a). The remarkable differences between the early and final versions of the statute further indicate that the exception was not limited to environmental cases. In addition,

the words "any cause of action" in section (3)(a) mean, in simple and plain terms, that the exception is not limited to any specific RCW section. Based on the foregoing analysis, then, the trial judge properly interpreted this statute.

*Sofie*, 112 Wn.2d at 668-69; *see also Brewer v. Fibreboard Corp.*, 127 Wn.2d 512, 535-36, 901 P.2d 297 (1995) (Johnson, J., concurring) (recognizing applicability of joint and several liability); *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 744 P.2d 605 (1987) (applying joint and several liability, without further analysis, to an asbestos-related lawsuit); *Mavroudis v. Pittsburgh-Corning Corp.*, 86 Wn. App. 22, 33, 935 P.2d 684 (1997) (noting *Sofie* holding that asbestos-related injuries fall within the hazardous substance exception to the general limitation of joint and several liability). Accordingly, under *Sofie*, the trial court erred in failing to impose joint and several liability on Asten.

¶14 Asten maintains that the *Sofie* court's analysis of joint and several liability is dicta because the defendants had conceded at trial that asbestos was a hazardous substance and because the primary issue was the plaintiffs' challenge to the constitutionality of a statutory limit on noneconomic damages. But the court's lengthy analysis of the applicability of RCW 4.22.070(3)(a) to asbestos-related claims, including a review of the legislative history of the statute, directly addressed the arguments raised in the defendants' cross appeal. *Sofie*, 112 Wn.2d at 666-68. Under the circumstances, the court's analysis cannot be dismissed as dicta or as a concession by parties.

¶15 Asten also points to the fact that *Sofie* provides no guidance for determining whether a specific product triggers the hazardous substance exception of RCW 4.22.070(3)(a) and that no subsequent appellate decision has addressed this issue. But such contentions are irrelevant to the applicability of *Sofie* to asbestos claims. Asten has not alleged that there are any distinctions between the Coulters' asbestos-related claims and those at issue in *Sofie*. The fact that the legislature has not revised the hazardous substance exception in RCW 4.22.070(3)(a) since the *Sofie*

decision is an indication of legislative acquiescence in the court's interpretation. *See Soproni v. Polygon Apartment Partners*, 137 Wn.2d 319, 327, 971 P.2d 500 (1999).

¶16 Asten next contends that the Coulters waived any challenge to the trial court's refusal to impose joint and several liability because they agreed to submit the case to the jury on an apportionment theory, failed to timely object to the instructions and verdict form, and failed to object to the trial court's response to a jury inquiry. We disagree.

¶17 Viewed in context, the record shows that the parties held contrary positions on the applicable tort law and that counsel for both sides persistently argued for their clients' positions throughout the trial proceedings. Asten's counsel initially advocated the use of three sets of jury instructions, to correspond with the three systems of tort law in existence during the period of Coulter's asbestos exposure, including contributory negligence as a complete bar to recovery for exposure prior to 1971. Asten also suggested the use of a verdict form with two lines, for the jury to apportion fault to Coulter and to Asten.

¶18 When the trial court indicated it was going to use a two-line verdict form, counsel for the Coulters submitted a proposed two-line form that required the jury to assign a percentage of fault to Coulter and to all others, including Asten, as a single group. Counsel for the Coulters also argued for the use of a three-line verdict form with apportionment of fault among Coulter, Asten, and others to prevent the necessity of a new trial if an appellate court were to agree with Asten's position:

> And I think if they [Asten] wish to preserve that issue, the way to do this would be to have three lines on the portions of question on the verdict form. The first one would be there for the jury to record a percentage of comparative fault that they assign to Mr. Coulter. The second line would be there to record percentage of fault they ascribe to Defendant Asten. And the third line would then be labeled "all others." The total of the three, then, on the verdict form indicate must equal a hundred percent.

What that would—we believe that in entering a judgment in the plaintiff's favor, in the event of a plaintiff's verdict, the Court would appropriately, in light of *Mavroudis* and the inapplicability of the Product Liability Act, would simply enter judgment deducting the percentage assigned to the plaintiff, *and Asten would be liable for the total of the line corresponding to their entry as well as the "all others."*

However, if the defendant is going to argue on appeal that that is incorrect, having broken it down (inaudible) will allow the Court of Appeal[s] to consider it without us facing the prospect of a retrial, because they could then have the findings of the jury broken down between Defendant Asten as distinct from all others, and that that would be available to us on appeal.

Tr. of Hr'g (TH) (Mar. 21, 2005) at 14-15 (emphasis added).

¶19 As the foregoing comments demonstrate, the Coulters advocated use of the three-line verdict form to preserve issues for appeal and to prevent the necessity of a retrial. Viewed in context of the entire record, counsel's comments cannot reasonably be construed as an agreement to forgo joint and several liability. While counsel did not use the phrase "joint and several liability," he clearly advocated the imposition of liability on a joint and several basis. Moreover, Asten's objections to the court's failure to instruct the jury on the three systems of tort law provide further evidence that the parties did not consider use of the special verdict form to constitute an agreement on the applicable law. Under these circumstances, when the court ultimately decided to adopt the three-line verdict form, the Coulters were not required to object further to preserve the issue of joint and several liability.

¶20 Nor did the special verdict form itself, which directed the jury to apportion *fault* among Coulter, Asten, and others, require the trial court to apportion *damages*. The court clearly recognized that the jury's findings would serve as the basis for subsequent legal determinations. For example, when considering the related issue of Coulter's

contributory negligence as a complete bar, the court noted that it was

> going to get the jury's read on this, and then we're going to make—I'm going to have to make a legal judgment whether it's going to act as a bar. I don't think I'm going to do that. But it's certainly—in the case it would be an appeal issue for you.

TH (Mar. 21, 2005) at 43. Nothing in the special verdict form or the other instructions relieved the court of its obligation to apply the proper law when entering judgment based on the jury's findings.

¶21 Finally, contrary to Asten's contention, the Coulters' failure to object to the trial court's response to a jury inquiry does not support application of the invited error doctrine. During deliberations, the jury submitted the following inquiry:

> How can the dollar amount or percentages of the settlement determined by the jury be adjusted by the court?

> Does the law allow for the court to modify dollar amounts awarded by the jury?

After conferring with counsel, the court responded,

> As indicated in the instructions, the Court applies the percentages of fault that the jury finds on the verdict form to the amount of damages the jury finds on the verdict form. It is simply a mathematical computation.

¶22 The court's response accurately conveyed to the jury the distinction between the trier of fact's determination of fault and the court's calculation of damages based on that determination. But the court did not identify or suggest the legal or mathematical basis for that computation, and it remained the court's responsibility to enter judgment in accord with the law on the facts determined by the jury. Consequently, the response did not preclude the court from calculating damages on the basis of joint and several liability. The Coulters did not waive the issue of joint and several liability or invite the error now challenged on appeal.

*Asten's Cross Appeal*

■ ¶23 In its cross appeal, Asten contends that if joint and several liability applies, Coulter's contributory negligence bars any recovery.[2] This argument is controlled by *Godfrey v. State*, 84 Wn.2d 959, 963, 530 P.2d 630 (1975).

¶24 Until the early 1970s, the contributory negligence of a plaintiff in a negligence action acted as a complete bar to recovery. *See Godfrey*, 84 Wn.2d at 963. In 1973, the legislature enacted former RCW 4.22.010 and .020, which replaced the principle of contributory negligence as a complete bar to recovery with contributory negligence as a damages-mitigating defense.[3] These new provisions took effect April 1, 1974. LAWS OF 1973, 1st Ex. Sess., ch. 138, § 3.

¶25 In *Godfrey*, our Supreme Court held that the statutes eliminating the use of contributory negligence as a bar to recovery applied "retrospectively to causes of action having arisen prior to the statute's effective date of April 1, 1974, but in which trials have begun subsequent thereto." *Godfrey*, 84 Wn.2d at 961. In reaching its decision, the court reasoned that RCW 4.22.010 and .020 related to practice, procedure, or remedies and did not affect a vested right because "[o]ne cannot have a vested right in a tort defense the merits of which cannot be determined until trial and upon which he does not and cannot rely in the initial injury to a plaintiff." *Godfrey*, 84 Wn.2d at 964. The court further concluded that the legislature had intended the statutes to operate retroactively. *Godfrey*, 84 Wn.2d at 968.

¶26 Aston argues that the retroactivity analysis in *Godfrey* is limited to claims arising after April 1971, three years before the statutes' effective date and therefore does not apply to Coulter, whose exposure to Asten's asbestos-containing products occurred primarily between 1962 and 1966. But Asten's arguments rest solely on isolated state-

---

[2] The Coulters contend that Asten did not raise this issue before the trial court and therefore waived it upon appeal. We disagree. The record demonstrates that Asten repeatedly raised the issue in written and oral arguments and in objections to jury instructions.

[3] This principle is now expressed in RCW 4.22.005.

ments at the conclusion of *Godfrey* that "the statute applies to all causes of action *having arisen during the applicable period of limitation prior to its effective date* though trials based thereon may have been commenced thereafter." *Godfrey*, 84 Wn.2d at 968 (emphasis added).

¶27 When recognizing the legislature's intent to ameliorate the harshness of contributory negligence as a total bar to recovery, the *Godfrey* court made clear that contributory negligence would no longer bar recovery for persons whose cause of action arose before the effective dates of the statutes.

> It would be incongruous indeed to frustrate this obvious legislative change in policy by adopting a position that would permit the rejected bar to recovery to continue in operation for years to come. Yet, such would be the result if we were to hold the operation of RCW 4.22.010 and .020 to be prospective only. For example, it is clear that if a minor child, insane person, one who is imprisoned on a criminal charge, or in execution under sentence of a court for a term less than his natural life were the victim of a negligent act prior to April 1, 1974, such person would be entitled to bring his cause of action to trial within the period of statutory limitation after removal of his disability. RCW 4.16.190.[4] *This could be a matter of years.* The question is not *whether* such cases exist, *but how many.*
>
> If, as we hold, the legislature intended the challenged statute to be retrospective in nature, there is no question whether the total bar to recovery has been abolished once and for all. Consequently, the minor, insane or others alluded to in the foregoing examples will be subject to the concept of comparative negligence. On the other hand, if we were to accept respondent's argument that the statute is prospective in operation this state would, for many years, face the probability of having litigants and our courts subjected to a dual system of recovery as these types of cases come to light. Such could hardly have been the intent or purpose of a legislature that clearly abolished contributory negligence as a bar to recovery.

*Godfrey*, 84 Wn.2d at 967-68 (footnote omitted).

---

[4] This statute provides for the tolling of the time limits for the commencement of an action when the plaintiff labors under a personal disability.

¶28 Asten's apparent literal reliance on the phrase "applicable period of limitation" is completely inconsistent with the *Godfrey* court's retroactivity analysis and with the court's foregoing discussion of the purpose and effect of the legislative change. Asten offers no basis in policy or law for such a strained reading. Under *Godfrey*, the retroactive effect of RCW 4.22.010 and .020 extends back to Coulter's asbestos exposure in the 1960s. *See Godfrey*, 84 Wn.2d at 968 ("there is no question whether the total bar to recovery has been abolished once and for all"); *see also Ashcraft v. Wallingford*, 17 Wn. App. 853, 859 n.2, 565 P.2d 1224 (1977) (retroactive effect of the statutes applies to all causes of action that arose prior to the statutes' effective date). Accordingly, Coulter's contributory negligence does not act as a complete bar to recovery.

¶29 Asten next contends that the application of joint and several liability necessitates a new trial because the jury instructions and special verdict form, as well as the court's reply to the jury's inquiry, provided for the apportionment of damages in proportion to fault and were therefore inaccurate. Asten also maintains that a retrial is required because the jury reached a verdict only by compromise. We disagree.

¶30 The instructions and the verdict form directed the jury to make factual findings regarding the total damages suffered by the Coulters and the relative fault of Asten, Ernest Coulter, and other entities. But the court has the duty to determine the legal consequences of those findings. Nothing in the instructions, the verdict form, or the court's response to the jury inquiry limited or modified the court's obligation to enter judgment in accordance with the law or suggested that the court would apply the jury's findings on the basis of joint and several liability or on some other basis.

¶31 Moreover, we would have to engage in pure speculation to conclude that the jury compromised its decision based on an understanding of the specific dollar amount that the trial court might award the Coulters. Although the jury reached a temporary deadlock and delivered its

verdict soon after receiving the court's response to its inquiry, we do not know how the jury arrived at its verdict. To draw from such circumstances the inference of an inappropriate compromise would require us to inquire into the thought processes of the jury and would constitute an improper impeachment of the verdict.

¶32 Finally, we consider Asten's argument that it is entitled to an offset for the full amount of the Coulters' pretrial settlements with other parties as represented by the Coulters prior to trial. RCW 4.22.060(1) provides:

> A party prior to entering into a release . . . or similar agreement with a claimant shall give five days' written notice of such intent to all other parties and the court. . . . A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence. A determination by the court that the amount to be paid is reasonable must be secured.

While the superior court is not required to base its calculations of offsets on the Coulters' pretrial representation of total settlements, a reasonableness hearing under RCW 4.22.060 is in order to determine the proper offset for settlements with other defendants. *See Mavroudis*, 86 Wn. App. at 36-39.

¶33 In conclusion, the trial court's award of damages is reversed. We remand solely for a reasonableness hearing pursuant to RCW 4.22.060 and an award of damages consistent with Asten's joint and several liability.

APPELWICK, C.J., and GROSSE, J., concur.

Reconsideration denied November 3, 2006.

Review denied at 161 Wn.2d 1011 (2007).