[No. 63148-9-I.   Division One.   January 11, 2010.]

Ernest Coulter et al., *Appellants*, v. Asten Group, Inc., *Respondent*.

*Philip A. Talmadge* and *Sidney C. Tribe* (of *Talmadge/ Fitzpatrick*); and *Cameron O. Carter* (of *Brayton Purcell LLP*), for appellants.

*G. William Shaw*, *Matthew J. Segal*, and *Kymberly K. Evanson* (of *K&L Gates LLP*), for respondent.

¶1 APPELWICK, J. — Coulter appeals the entry of judgment after a reasonableness hearing conducted under RCW 4.22.060. They argue that the trial court erred as a matter of law by offsetting possible future settlements against the judgment, in addition to the settlement agreements actually before the court. Because the plain language of RCW 4.22.060 does not allow the court to offset a judgment by settlements not before it, we remand for a correction of the judgment so that it reflects only those offsets currently before it.

## FACTS

¶2 In *Coulter v. Asten Group, Inc.*, Ernest and Lerose Coulter sued AstenJohnson Inc.[1] (Asten) and other sellers and manufacturers of asbestos-containing products Ernest Coulter was exposed to during the course of his work at the Port Townsend Paper Mill. 135 Wn. App. 613, 617, 146 P.3d 444 (2006). By the time of trial, Asten was the only remaining defendant. *Id.* The jury apportioned 2 percent of the liability to Coulter, 5 percent to Asten, and 93 percent to all the other suppliers of asbestos-containing products to the mill. *Id.* at 618. The total damages award was $242,500. *Id.* The trial court entered judgment against Asten in the amount of $12,125 plus $611 in taxable costs, according to the jury's apportionment of liability.

¶3 Coulter appealed and argued the court should have instead entered a judgment for the total damages award

---

[1] In the record before us the parties refer to the respondent as AstenJohnson Inc.

based on joint and several liability, less an offset to account for Coulter's settlements with other defendants. *Id.* Asten's cross appeal sought to bar Coulter from recovery based on his contributory negligence. *Id.* at 624. Asten's cross appeal did not involve a challenge to the judgment amount, but rather to the theory of liability on which the court would determine its share of the judgment. *Id.* at 624-27.

¶4 This court reversed the judgment, holding that Asten was a joint and several tortfeasor. *Id.* at 627. This court directed the trial court to hold a reasonableness hearing under RCW 4.22.060 to determine the appropriate offset for the full amount of Coulter's pretrial settlements with other defendants. *Id.* Once the offset amount was established, this court directed the trial court to award damages consistent with Asten's joint and several liability. *Id.* Without offset, Asten would be responsible for 98 percent of the judgment, for a total of $237,650.

¶5 Upon remand, the parties agreed that the offset amount for settlements from other defendants and bankruptcy trusts should be $94,977. Asten did not challenge the reasonableness of these specific agreed upon settlements. Asten argued, however, that it was entitled to an additional offset based on unrecovered settlement amounts Coulter might receive in the future. Coulter asked for postjudgment interest on the original judgment amount.

¶6 The trial court agreed that the offset should be $94,977 for paid settlement proceeds. The trial court also offset the judgment by $57,215 for probable recovery from future trust applications, and $7,200 for the unpaid portion of the Coulters' agreement with the Bartells Asbestos Settlement Trust, for a total of $64,415 for potential future recovery. The total offset was $159,392. The offsets resulted in a total judgment against Asten in the amount of $78,258, plus $611 in taxable costs.

¶7 The court determined Coulter was not entitled to prejudgment interest, because their tort claims were unliquidated. It also decided that postjudgment interest

should accrue from the date of the entry of final judgment, March 3, 2009. Coulter timely appealed the order.

## DISCUSSION

### I. Reasonableness Hearing

¶8 The parties contest whether RCW 4.22.060 grants authority to the trial court to consider offsets for settlements not before the court when conducting a reasonableness hearing.[2] RCW 4.22.060 reads:

> (1) A party prior to entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement with a claimant shall give five days' written notice of such intent to all other parties and the court. The court may for good cause authorize a shorter notice period. The notice shall contain a copy of the proposed agreement. A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence. A determination by the court that the amount to be paid is reasonable must be secured. If an agreement was entered into prior to the filing of the action, a hearing on the issue of the reasonableness of the amount paid at the time it was entered into may be held at any time prior to final judgment upon motion of a party.

> The burden of proof regarding the reasonableness of the settlement offer shall be on the party requesting the settlement.

> (2) A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for

---

[2] The parties dispute, as a threshold matter, the proper standard of review this court applies when reviewing a reasonableness hearing. Coulter asserts that, because the central argument is that the trial court exceeded its statutory authority, review should be de novo. Asten responds that a trial court's determination of reasonableness is reviewed for abuse of discretion. Asten is correct that, in ordinary circumstances, we review the trial court's determination of reasonableness for abuse of discretion. *Werlinger v. Warner*, 126 Wn. App. 342, 349, 109 P.3d 22 (2005). However, because Coulter argues that the trial court exceeded its jurisdiction by considering hypothetical settlements Coulter might receive in the future, the threshold question presented is necessarily one of statutory interpretation, which we review de novo. *Meadow Valley Owners Ass'n v. Meadow Valley, LLC*, 137 Wn. App. 810, 816, 156 P.3d 240 (2007).

contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.

The court considers the following factors to determine if a settlement is reasonable: (1) the releasing party's damages; (2) the merits of the releasing party's liability theory; (3) the merits of the released party's defense theory; (4) the released party's relative fault; (5) the risks and expenses of continued litigation; (6) the released party's ability to pay; (7) any evidence of bad faith, collusion, or fraud; (8) the extent of the releasing party's investigation and preparation; and (9) the interests of the parties not being released. *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 717, 658 P.2d 1230 (1983), *abrogated on other grounds by Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988). Not all factors are necessarily relevant in a given case. *Werlinger v. Warner*, 126 Wn. App. 342, 351, 109 P.3d 22 (2005). A trial court's finding of reasonableness is a factual determination that will not be disturbed on appeal when supported by substantial evidence. *Brewer v. Fibreboard Corp.*, 127 Wn.2d 512, 524, 901 P.2d 297 (1995).

¶9 Coulter contends the trial court erred in exceeding its statutory authority, based on the plain language of RCW 4.22.060(2), which does not allow a trial court to consider settlements not currently before it. Coulter's reading of the statute is that reasonableness hearings look retrospectively at sums a plaintiff has already collected, but not prospectively at what might be collected.

¶10 Based on this reading of the statute, Coulter explains, the court erred as a matter of law by considering settlements that Coulter could expect to receive in the future from various bankruptcy trusts to which Coulter had not yet applied, settlements that Coulter was scheduled to receive from bankrupt entities, settlements that Coulter

was scheduled to receive from bankruptcy trusts, and settlements Coulter could expect to recover from other bankruptcy trusts that were not yet operating. The court calculated the total of the future settlements to be $57,215.

¶11 Asten responds that the language "the claim shall be reduced by an amount determined by the court to be reasonable" affords the court broad discretion to determine a reasonable offset based on the record before it. RCW 4.22.060(2). Asten argues that the court can determine the offset based on settlement amounts already received, settlement agreements that have not yet been paid out, and pending and potential claims.

¶12 The first step in statutory interpretation is to look to the plain language to determine the meaning of a statute. *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). We give effect to the plain language if it is not ambiguous. *Id.* When interpreting a statute, the court should read it in its entirety and, if possible, each provision must be harmonized with other provisions: statutes "must be construed so that all the language is given effect and no portion is rendered meaningless or superfluous." *Kilian v. Atkinson*, 147 Wn.2d 16, 21, 50 P.3d 638 (2002). Courts avoid reading statutes in ways that will lead to absurd or strained results. *Wright v. Jeckle*, 158 Wn.2d 375, 379-80, 144 P.3d 301 (2006). Where the plain language of the statute is subject to more than one reasonable interpretation, it is ambiguous. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001). If ambiguous, we examine the statute's legislative history to discern the legislature's intent. *Id.*

¶13 The plain language of the statute indicates that the court has authority to review only the settlement agreements currently before it. Subsection (1) requires the settling party to provide notice of the proposed agreement to the other parties and the court. RCW 4.22.060(1). By its own terms, the statute applies to "a release, covenant not to sue, covenant not to enforce judgment, or similar agreement." RCW 4.22.060(1). The statute excludes any consid-

eration of claims that have not yet been settled or that have not been submitted for approval.[3] All of the findings relating to settlements not before the court must be stricken.[4] The judgment must be corrected to remove the offsets for claims that had not yet been settled, and the findings and conclusions amended accordingly.

¶14 As to the settlements the trial court properly considered, Coulter has the burden of establishing that the trial court's finding of reasonableness was not supported by substantial evidence. *Brewer*, 127 Wn.2d at 524. The parties agree that Asten is entitled to an initial setoff of $94,977 for "the settlement amounts currently received by Plaintiffs from settling defendants and bankruptcy trusts," so we make no inquiry into their reasonableness.

¶15 However, there were two agreements before the court—with Celotex and the Bartells Asbestos Settlement Trust—that were not included in the initial setoff of $94,977. Coulter argued the court could not offset amounts not yet paid. However, the plain language of RCW 4.22.060 does not preclude the trial court from awarding Asten such an offset.

¶16 Coulter assigns error to findings of fact 17 and 29. These findings relate to a settlement agreement before the court with the Bartells Asbestos Settlement Trust, whose

---

[3] Coulter also contends the trial court erred as a matter of law, because the *Glover* factors do not allow for consideration of settlements not currently before it. The trial court specifically considered two *Glover* factors: Coulter's damages, which are $242,500, and the merits of Coulter's liability theory. It then concluded Coulter's "failure to pursue claims against other defendants and responsible bankruptcy trusts is unreasonable." Coulter is also correct on this ground. Neither the plain language of RCW 4.22.060 nor the *Glover* factors allow the court to consider settlements other than those actually before it.

[4] This includes: findings of fact 9, 12, and 24, which relate to potential future settlement amounts should Coulter apply to a specific list of bankruptcy trusts, resulting in a setoff of $34,214; findings of fact 13 and 25, which relate to pending settlements from bankrupt entities, resulting in a setoff of $18,774; and findings of fact 15 and 27, which relate to settlement amounts from other bankruptcy trusts that are not yet operating, resulting in a setoff of $2,500. Finally, our holding also applies to findings of fact 14 and 26, which relate partially to a settlement agreement with Eagle-Picher Settlement Trust, resulting in a setoff of $400. Because Coulter's claim against it remains pending, it was improper for the court to award an offset.

liquidated value is $8,000, but Coulter had received only $800.[5] The court awarded another offset to Asten for $7,200. Coulter also assigned error to findings of fact 14 and 26, which relate partially to a settlement agreement with Celotex. The court awarded an offset for $1,327, which the court found that Coulter was "likely to recover . . . within the next two years." Coulter contests whether the court should have offset the judgment by the amounts yet to be recovered.

¶17 Although the parties vociferously dispute the import of *Brewer* in resolving this issue, it may have limited utility. Brewer had entered into a settlement agreement with Manville Personal Injury Settlement Trust for $175,000. *Brewer*, 127 Wn.2d at 517. Under the terms of the agreement, Brewer accepted 12 percent of the settlement amount, $21,000, immediately. *Id.* at 517-18. The remaining 88 percent was to be paid incrementally over a span of some years. *See id.* Brewer did not give notice of his intent to enter into a settlement agreement with the Manville Trust.[6] *Id.* at 526. But, the defendants in his pending suit moved for a reasonableness hearing. *Id.* Subsequently, the executive director of the Manville Trust stated in an affidavit that, because of financial hardship, it was highly unlikely that Brewer would recover the remainder of the total value of his settlement agreement. *Id.* at 518-19. At the reasonableness hearing, the court determined that the $175,000 was reasonable. *Id.* at 520. The Supreme Court, however, reviewing the trial court's determination of reasonableness, held that although $175,000 was reasonable, the better and fairer result was to value the settlement for setoff purposes at $21,000, the amount "actually received." *Id.* at 532. Central to the court's holding was its consideration that Brewer would not receive the total value of the settlement, "given the acknowledged current financial condition of the Manville Trust." *Id.*

---

[5] The $800 is included in the $94,977 offset; the agreed but unpaid amounts were not.

[6] Manville Trust was not a named defendant. *Brewer*, 127 Wn.2d at 526.

¶18 Contrary to the situation in *Brewer*, there is no evidence in the record before us that Bartells Trust is experiencing financial hardship. While Coulter argues that all asbestos trust settlements should be regarded as uncertain until paid, Coulter should have presented this as evidence at the reasonableness hearing. Absent evidence that Coulter would not actually receive the total value of the settlement agreement, as in *Brewer*, it is within the court's discretion to offset the judgment by the total value of the settlement agreement.[7]

## II. Interest on the Judgment

### A. Prejudgment Interest from 2005 to 2009

¶19 Coulter contends he is entitled to prejudgment interest from the date of the first judgment, May 31, 2005, until the date of the second judgment, entered March 3, 2009. The trial court found that Coulter was not entitled to prejudgment interest on any of the jury's award, because the economic damages were not liquidated. We review a trial court's decision regarding prejudgment interest for abuse of discretion. *Hadley v. Maxwell*, 120 Wn. App. 137, 141, 84 P.3d 286 (2004).

¶20 A prevailing party is generally entitled to prejudgment interest, provided the damages are liquidated. *Lakes v. von der Mehden*, 117 Wn. App. 212, 214, 70 P.3d 154 (2003). The interest is awardable "when the amount claimed is liquidated" or "when the amount claimed is unliquidated but is determinable by computation with

---

[7] Unlike the Bartells agreement, the Celotex agreement provided that its gross settlement value was $18,819, but that Coulter would receive only a percentage. It also provided that upon Coulter's return of the agreement, he would receive a check for half of the gross settlement value times the current payment percentage; no later than two years after the date of the first check, Coulter was to receive a second check in the amount of the difference between the payment percentage times the gross settlement value and the amount of the first payment received. Coulter has not argued that the amount of this offset is improper. Nor has he provided evidence refuting the probability of his receipt of $1,327 under the agreement. Asten provided evidence that $1,327 was likely to be paid within two years under the agreement. We have no basis on which to find this offset unreasonable. *Brewer*, 127 Wn.2d at 524.

reference to a fixed standard in a contract." *Id.* at 217. A claim is liquidated if "data in the evidence makes it possible to compute the amount with exactness, without reliance on opinion or discretion." *Id.*

¶21 In *Hadley*, Division Three awarded prejudgment interest for the period between a damages verdict and an ensuing liability verdict. 120 Wn. App. at 141, 144, 147. The Hadleys sued the Maxwells for personal injury damages arising out of a car accident, but Mrs. Hadley also filed a cross claim against Mr. Hadley, the driver. *Id.* at 140. The Maxwells appealed on a liability issue but did not challenge the damages award. *Id.* On remand for a new trial on liability alone, the jury found the Maxwells solely liable. *Id.* The trial judge denied the Hadleys' proposed prejudgment interest arrangement, where the prejudgment interest accrued between the 1998 damages verdict and the date of the 2003 liability verdict. *Id.* at 140-41. Division Three reasoned that, because the Maxwells had never challenged the damages award and reviewing courts had impliedly affirmed it, the Hadleys were entitled to prejudgment interest for the period between the 1998 damages verdict and the date of the 2003 liability verdict. *Id.* at 147.

¶22 The facts here are similar in that the parties appealed after the entry of the first judgment on a liability issue. *Coulter*, 135 Wn. App. at 624. And, Asten, like the Maxwells, did not appeal the damages award, only the liability theory. *See id.* However, this court's earlier remand for a reasonableness hearing prevents a simple application of the reasoning and holding in *Hadley*. A reasonableness hearing calls for an exercise of judicial discretion. The original damages award may be changed by the appropriate offset. RCW 4.22.060. Unlike *Hadley*, where the resolution was merely a question of apportionment, here there is some uncertainty as to the damages Coulter will receive from Asten. *See* 120 Wn. App. at 140-141.[8] The uncertainty of the

---

[8] The language of this court's instructions on remand are telling, as it reflects uncertainty as to the final damages award: "While the superior court is not

offset makes it impossible to call the damages award liquidated, because it is impossible "to compute the amount with exactness, without reliance on opinion or discretion." *Lakes*, 117 Wn. App. at 217.

## B. Postjudgment Interest on 2005 Judgment

¶23  Coulter also contends he is entitled to postjudgment interest, under RCW 4.56.110(3), on the entire damage award from the date the judgment on the verdict was entered, May 31, 2005.

¶24  The trial court found that under RCW 4.56.110, Coulter was not entitled to postjudgment interest, because this court had reversed the first entry of judgment and directed that a new judgment be entered. The court further noted that postjudgment interest would run only from the entry of a new judgment. We review de novo the trial court's application of a statute to a given set of facts. *Hadley*, 120 Wn. App. at 145.

¶25  RCW 4.56.110(3) provides:

Judgments founded on the tortious conduct of individuals or other entities . . . shall bear interest from the date of entry at two percentage points above the equivalent coupon issue yield, as published by the board of governors of the federal reserve system, of the average bill rate for twenty-six week treasury bills as determined at the first bill market auction conducted during the calendar month immediately preceding the date of entry. In any case where a court is directed on review to enter judgment on a verdict or in any case where a judgment entered on a verdict is wholly or partly affirmed on review, interest on the judgment or on that portion of the judgment affirmed shall date back to and shall accrue from the date the verdict was rendered.

Coulter maintains that, under *Hadley*, he is entitled to postjudgment interest on $142,673, from May 31, 2005.

---

required to base its calculations of offsets on the Coulters' pretrial representation of total settlements, a reasonableness hearing under RCW 4.22.060 is in order to determine the proper offset for settlements with other defendants." *Coulter*, 135 Wn. App. at 627.

Similar to the facts here, the defendants in *Hadley* challenged their liability, but not the amount of the verdict, and were awarded postjudgment interest running from the first judgment date. 120 Wn. App. at 146.

¶26 Asten disagrees that *Hadley* controls, countering that, because the ultimate judgment required a reasonableness hearing to determine the offset, more was required than simple recomputation, one of the standards the court mentioned in *Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 798 P.2d 799 (1990). In *Fisher*, the appellate court reversed the trial court's award of interest that ran from the date of the original judgment, because an appellate court had reversed portions of the original judgment. *Id.* at 374-75. The appellate court directed the trial court to consider two alternative measures of damages on remand, so more than computation was required. *Id.* at 373-74. The court in *Fisher* relied on the following distinction: interest runs from the date of the original judgment where an appellate court merely modifies the award " 'and the only action necessary in the trial court is compliance with the mandate,' " whereas interest runs from the new judgment where an appellate court " 'has reversed the trial court judgment and directed that a new money judgment be entered.' " *Id.* at 373 (quoting *Fulle v. Boulevard Excavating, Inc.*, 25 Wn. App. 520, 522, 610 P.2d 387 (1980)).

¶27 The language of the holdings in both *Fisher* and *Coulter* specifically "reversed" the judgment of the trial court. *Id.* at 373-74 (explaining the appellate court in the first appeal reversed portions of the original judgment and directed the trial court to consider the two alternative measures of damages on remand); *Coulter*, 135 Wn. App. at 627 (reversing the trial court's award of damages and remanding "solely for a reasonableness hearing . . . and an award of damages consistent with Asten's joint and several liability"). Our reversal in *Coulter* was similar to *Hadley* in that it did not reverse the determination of the plaintiff's damages. Nevertheless, we reversed the judgment in *Coulter* and remanded for a reasonableness hearing, at the

conclusion of which a new money judgment was entered. This required an exercise of discretion, rather than mere computation, on the part of the trial court. There was no judgment on which interest could have run. RCW 4.56.110(3).

### C. Interest on 2009 Judgment

¶28 The relief ordered in this opinion requires a mere recalculation of the judgment for the improperly allowed offsets. The judgment, as recalculated on remand, should bear interest from March 3, 2009. *See Fisher*, 115 Wn.2d at 373.

¶29 We remand to correct the judgment consistent with this opinion.

GROSSE and LEACH, JJ., concur.