# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50370-1-II |
| Respondent, | |
| v. | |
| NATHANIEL McCASLAND, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Nathaniel Wesley McCasland appeals his conviction and sentence for first degree child molestation. He argues that (1) the State produced insufficient evidence of sexual gratification, (2) the trial court erred in rejecting McCasland's sentencing argument that incest was more "factually comparable" than second degree rape, and (3) the trial court violated his equal protection, due process, and jury trial rights at sentencing. Br. of Appellant at 3. We affirm.

## FACTS

### I. PRETRIAL

The State charged McCasland with one count of first degree child molestation with a special allegation of domestic violence after five-year-old D.M. disclosed that McCasland had sexually assaulted her. The State also alleged that McCasland used his "position of trust, confidence, or fiduciary responsibility to facilitate the commission of the [child molestation] offense." Clerk's Papers (CP) at 3.

Pretrial, the State moved to admit statements that D.M. made to Kim Holland, Shelly McCasland, Kymberly Adams, Aubrey Holmquist, Dr. Jack Stump, and Lena Maynard under the child hearsay statute, RCW 9A.44.120, and other hearsay exceptions. After a hearing, the trial court concluded that D.M.'s statements were admissible under the child hearsay statute.

## II. TRIAL

At trial, witnesses testified to the following relevant facts. D.M. was in the bathroom with McCasland, and he was dressing her for the day when she saw McCasland's "private parts." V Report of Proceedings (RP) at 716. D.M. could not open the door because McCasland closed and locked it. McCasland told her not to tell anyone what he did and that he was trying to keep what happened a secret. McCasland had her hold and stroke his privates. McCasland said, "'This feels good.'" 4 RP at 596.

McCasland denied exposing himself to D.M. But McCasland admitted that he showed D.M. his privates after D.M. asked to see them. McCasland says he did not know why he let D.M. see his privates. He said that D.M. "reached out [and] grabbed [my] penis and pulled on it." 4 RP at 604. He "pulled [D.M.] away and told her not to [pull on his penis 'b]ecause that's what we do to make it feel good.'" 4 RP at 604.

Luz Escobar, a nurse at the hospital, testified that McCasland said he felt suicidal because he exposed his penis to D.M. and he did not want to go to jail. Dawn Tec Yah, a counselor at the hospital, testified that she evaluated McCasland, and he told her that D.M. came into the bathroom while he was using it and that he was worried about D.M. telling someone she saw his penis. Detective Monica Hernandez testified that McCasland demonstrated the motion that D.M. made

2

when describing the incident by forming a circle with his hand and "moving it diagonal up and down" during an interview with Detective Hernandez. 6 RP at 880.

At trial, McCasland testified that he was going to the bathroom when D.M. walked in, and he closed the door and locked it behind her. McCasland said that D.M. asked to see his underwear after he gave her a bath. He showed her his underwear and then D.M. asked if she could see his privates, and he "said sure," pulled down his underwear, and showed her his penis. 8 RP at 1107. D.M. asked if she could touch McCasland's penis; he said no and pulled up his underwear.

D.M. immediately asked if she could see his penis again; he agreed and showed her his penis again. D.M. asked if she could touch McCasland's penis, and he said yes. When he pulled his pants down the second time, he "figured she'd poke it." 8 RP at 1109. Instead, McCasland said D.M. "grabbed a hold of [his penis]" with her hand in a circle and "pulled on it a couple of times" moving her hand up and down. 8 RP at 1109. D.M. asked McCasland if it hurt; McCasland said no and told D.M. "sometimes it can make it feel good." 8 RP at 1112.

McCasland denied making or asking D.M. to touch his penis. He testified that he did not let D.M. touch his penis for sexual gratification, that he did not have an erection or ejaculate when D.M. pulled on his penis, and that it did not feel good. Instead, McCasland said he let D.M. touch his penis to satisfy her curiosity. McCasland said he knew that having a child touch his penis was inappropriate. McCasland was concerned that D.M. would tell someone what happened.

The jury returned a guilty verdict on the child molestation charge and found that (1) McCasland and D.M. were "members of the same family or household" and (2) McCasland "use[d] a position of trust to facilitate the commission of the crime." CP at 142-43.

### III. Sentencing

At sentencing, the State argued that McCasland's offender score was 6 and based on two prior Oregon convictions, he must be sentenced under the Persistent Offender Accountability Act (POAA), RCW 9.94A.570.[1] In 1991, McCasland pleaded guilty to two counts of first degree sodomy in Oregon. The State compared the first degree sodomy convictions under former Or. Rev. Stat. § 163.405 (1989) with Washington's second degree child rape statute in effect at the time of the offenses, RCW 9A.44.076.

The State conceded that former Or. Rev. Stat. § 163.405 was not legally comparable to RCW 9A.44.076 because the Oregon statute was broader than the Washington statute. But it argued that McCasland's Oregon first degree sodomy convictions were factually comparable to Washington convictions for second degree child rape. The State argued that McCasland was a persistent offender under former RCW 9.94A.030(37) (2012)[2] based on his current conviction for first degree child molestation and his two prior out-of-state convictions.

The State provided the sentencing court with the Oregon indictment, guilty plea, order entering the plea, sentencing report, judgment of conviction and sentence, and information on statutes prohibiting marriage between siblings in Oregon and Washington. An Oregon grand jury

---

[1] McCasland "changed his name from Jonathan Wesley Tewes to Nathaniel Wesley McCasland . . . on February 17, 2000." CP at 145. The two 1992 first degree sodomy convictions are under the name Jonathan Wesley Tewes. McCasland admitted that he was convicted of the two first degree sodomy counts.

[2] The State cited to RCW 9.94A.030(38) but at the time of McCasland's crime the correct subsection was (37). The legislature amended RCW 9.94A.030 in 2015, which changed the subsection numbering. LAWS OF 2015, ch. 287, §1. We will cite the version of the statute in effect at the time of McCasland's crime.

accused McCasland of, as relevant here, two counts of first degree sodomy under former Or. Rev. Stat. § 163.405.

McCasland entered a guilty plea to both counts admitting that in July 1991, he had oral and anal sex with his 12-year-old half-brother. McCasland was 19 in 1991 when the offenses were committed. The Oregon sentencing court accepted McCasland's plea and entered a judgment of conviction on both counts. The Oregon sentencing court also found aggravating factors of threats of violence and actual violence toward the victim and that the offense involved multiple incidents. The sentencing report considered each conviction a "Most Serious Offense." CP at 169.

McCasland argued in response that his prior first degree sodomy convictions were not "strike[s]" under the POAA because those offenses "most closely resemble" the second degree incest offense in Washington (former RCW 9A.64.020 (1985)), which is not legally comparable to the first degree sodomy offense in former Or. Rev. Stat. 163.405. CP at 204, 206.

The sentencing judge concluded that Oregon's first degree sodomy statute was not legally comparable to Washington's second degree child rape statute because it was broader than Washington's statute. However, the judge found that the first degree sodomy convictions were factually comparable to second degree child rape in Washington.

The superior court sentenced McCasland to life without the possibility of parole as a persistent offender under RCW 9.94A.570. The sentencing court based the persistent offender sentence on the first degree child molestation offense and the prior first degree sodomy convictions, which the court found were comparable to a qualifying offense under "RCW

9.94A.030(33)(b)(i)."[3] CP at 218. McCasland had an offender score of 6, and the standard range sentence for the first degree child molestation conviction was 98 to 130 months. McCasland's criminal history included the two prior Oregon first degree sodomy convictions.

## ANALYSIS

### I. SUFFICIENCY OF EVIDENCE

McCasland argues that there was insufficient evidence of sexual contact. We disagree.

### A. LEGAL PRINCIPLES

Evidence is sufficient if, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Johnson*, 188 Wn.2d 742, 751, 399 P.3d 507 (2017) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)).

When challenging the evidence as insufficient, a defendant admits that the State's evidence is true and admits all reasonable inferences that arise therefrom. *State v. Tilton*, 149 Wn.2d 775, 786, 72 P.3d 735 (2003). Circumstantial and direct evidence are given equal weight. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). We do not review the fact finder's credibility determinations. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

In order to convict a person of first degree child molestation, the State must show beyond a reasonable doubt that the individual "knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the

---

[3] The judgment and sentence cites to RCW 9.94A.030(33)(b)(i). The subsection (33) in effect at the time of McCasland's crime does not contain subsections. It appears that the correct subsection is former RCW 9.94A.030(37) (2012).

perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1).

"Sexual contact means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). "Sexual gratification is not an essential element of [first degree child molestation], but is a definitional term clarifying the meaning of the essential and material element of sexual contact." *State v. T.E.H.*, 91 Wn. App. 908, 915, 960 P.2d 441 (1998). Courts require evidence of sexual gratification to prove sexual contact because absent that evidence, the contact may have been "inadvertent" rather than sexual in nature. *T.E.H.*, 91 Wn. App. at 916.

In determining whether the State proved sexual contact beyond a reasonable doubt, we look to the totality of the facts presented. *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009). Sexual contact includes touching "that a person of common intelligence could fairly be expected to know . . . was improper." *State v. Jackson*, 145 Wn. App. 814, 819, 187 P.3d 321 (2008). We may infer that contact was sexual in nature based on evidence that the victim grabbed a defendant's private parts and that the defendant tried to conceal that conduct. *See Tilton*, 149 Wn.2d at 786.

B. SUFFICIENT EVIDENCE OF SEXUAL GRATIFICATION

Here, McCasland challenges only the sexual contact element of first degree child molestation. He argues that the State did not establish sexual contact because the touching was not for the purpose of sexual gratification. McCasland contends that the incident was "a misguided attempt at sex education" and emphasizes that he "did not have an erection." Br. of Appellant at 11. These arguments fail.

McCasland took D.M. into the bathroom, closed and locked the bathroom door, showed her his penis twice, and showed her how to touch his penis before asking her to touch it. McCasland had her "hold and stroke his privates." V RP at 718. Multiple witnesses testified that D.M. demonstrated the way she touched McCasland's penis by forming a circle with her hand and making an up and down motion. McCasland testified that D.M. "grabbed a hold of [his penis]" with her hand in a circle and "pulled on it a couple of times" while moving her hand up and down. 8 RP at 1109. Multiple witnesses, including McCasland, also testified that McCasland told D.M. that the way she touched his penis either did or could make it "feel good." 4 RP at 604; 8 RP at 1112, 1183.

Based on the totality of the facts presented, the contact described was sexual because it was contact that "a person of common intelligence could fairly be expected to know . . . was improper." *Jackson*, 145 Wn. App. at 819. The facts surrounding the physical touching combined with the evidence that McCasland tried to conceal the contact further supports an inference establishing sexual contact. *See Tilton*, 149 Wn.2d at 786. McCasland told D.M. not to tell anyone and that he was trying to keep what happened a secret.

While McCasland testified that he did not let D.M. touch his penis for sexual gratification and that it did not feel good, the jury was free to disbelieve his account of the event. Additionally, the fact that McCasland told Shelly McCasland that he did not know why he let D.M. see his privates, is inconsistent with his argument that he allowed the touching for educational purposes. Moreover, McCasland testified that he knew that having a child touch his penis was inappropriate at the time of the contact. That testimony also supports a finding that the contact was sexual

because it indicates that the contact was the type "a person of common intelligence could fairly be expected to know . . . was improper." *Jackson*, 145 Wn. App. at 819.

Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences therefrom, a rational trier of fact could have found beyond a reasonable doubt that the State proved that McCasland had sexual contact with D.M. for his sexual gratification. Therefore, we hold that sufficient evidence of sexual contact supports McCasland's conviction.

## II. COMPARABILITY OF OUT-OF-STATE CONVICTIONS

McCasland argues that Washington's first degree incest offense is *more* factually comparable than Washington's second degree rape offense is to Oregon's first degree sodomy offense. Then he contends that first degree incest is not a qualifying offense under the POAA, and thus the trial court erred.[4] We reject McCasland's more "factually comparable" argument. Br. of Appellant at 3.

### A. LEGAL PRINCIPLES

Persistent offenders include defendants convicted of first degree child molestation who have prior out-of-state convictions for offenses that are comparable to the offenses listed in former RCW 9.94A.030(37)(b)(i). Former RCW 9.94A.030(37)(b)(i)(A), (ii). The enumerated offenses include second degree child rape. Former RCW 9.94A.030(37)(b).

---

[4] In his reply brief, McCasland argues that Oregon's first degree sodomy convictions are more "factually comparable" to Washington's first degree *sodomy* offense, which is not a qualifying offense under the POAA. Reply Br. of Appellant at 2. Because we do not consider arguments made for the first time in a reply brief, we do not address whether sodomy is a "more comparable" offense. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); *State v. Chen*, 178 Wn.2d 350, 358 n.11, 309 P.3d 410 (2013).

We review the classification of out-of-state convictions for sentencing purposes de novo. *State v. Jackson*, 129 Wn. App. 95, 106, 117 P.3d 1182 (2005). Whether a prior out-of-state conviction is comparable to a qualifying Washington offense listed under former RCW 9.94A.030(37)(b)(i) generally involves a two-part test. *State v. Olsen*, 180 Wn.2d 468, 472, 325 P.3d 187 (2014). First, the sentencing court determines whether the offenses are legally comparable and if not, then the court determines whether the offenses are factually comparable.[5] *Olsen*, 180 Wn.2d at 472-73.

## B. FACTUAL COMPARABILITY

Notably, McCasland does not argue that the trial court erred because Washington's second degree child rape is not factually comparable to Oregon's first degree sodomy. Instead, he argues only that incest is "more comparable" than Washington's second degree child rape offense. McCasland fails to cite any authority that the trial court must use the "most comparable" offenses when sentencing under the POAA.

Contrary to this argument, the POAA simply provides that the definition of persistent offender includes defendants convicted of first degree child molestation who have prior out-of-state convictions for offenses that are comparable to the offenses listed in former RCW 9.94A.030(37)(b)(i). Former RCW 9.94A.030(37)(b)(i)(A), (ii). Thus, it is immaterial whether Washington's incest offense may be *more* factually comparable to Oregon's first degree sodomy convictions than second degree child rape. Because McCasland does not argue that second degree

---

[5] The parties agree that Oregon's first degree sodomy statute is broader than Washington's second degree rape statute. Thus, as the parties do, we address only the factual comparability prong.

child rape is not factually comparable to Oregon's first degree sodomy, McCasland has not shown that the trial court erred. Accordingly, McCasland's argument fails.

### III. EQUAL PROTECTION

McCasland argues that the sentencing court violated his constitutional rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington Constitution by sentencing him as a persistent offender. We reject McCasland's equal protection argument.

### A. PRINCIPLES OF LAW

We review equal protection claims de novo. *See State v. Hirschfelder*, 170 Wn.2d 536, 550-52, 242 P.3d 876 (2010). Our Supreme Court applies rational basis scrutiny when defendants sentenced under the POAA assert equal protection claims under article I, section 12 and the Fourteenth Amendment based on alleged disparate treatment under the POAA's provisions. *State v. Thorne*, 129 Wn.2d 736, 770-71, 921 P.2d 514 (1996); *State v. Manussier*, 129 Wn.2d 652, 672-73, 921 P.2d 473 (1996).

We previously held that the State has a rational basis for treating sentencing factors under the POAA differently than elements of a crime and that the POAA does not violate equal protection. *State v. McKague*, 159 Wn. App. 489, 517-19, 246 P.3d 558, *aff'd*, 172 Wn.2d 802, 262 P.3d 1225 (2011). Both Division One and Division Three of this court have agreed. *State v. Williams*, 156 Wn. App. 482, 496-98, 234 P.3d 1174 (2010); *State v Langstead*, 155 Wn. App.

448, 453-57, 228 P.3d 799 (2010). McCasland has not presented any compelling reason to disregard this authority.[6]

We hold that having the trial court find by a preponderance of the evidence that he had a prior strike offense under the POAA did not violate McCasland's right to equal protection.

## IV. RIGHT TO A JURY TRIAL AND DUE PROCESS

McCasland argues that the trial court violated his rights to a jury trial and due process because the sentencing judge, and not a jury, found the existence of qualifying prior convictions under the POAA. However, he acknowledges that controlling precedent has rejected arguments asserting a right to a jury trial on prior convictions under the POAA and that proof of "the fact of a prior conviction may be an exception" to *Apprendi*[7] and its progeny. Br. of Appellant at 29-30. As McCasland seems to acknowledge, his argument fails.

In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Whether a defendant had a prior strike offense under the POAA is a fact of a prior conviction.

Our Supreme Court has stated that based on *Apprendi* "[w]e have consistently held that the existence of a prior conviction need not be presented to a jury and proved beyond a reasonable doubt." *Olsen*, 180 Wn.2d at 473. And our Supreme Court has expressly stated that the "argument

---

[6] McCasland relies on *State v. Roswell*, 165 Wn.2d 186, 196 P.3d 705 (2008), but *Roswell* is inapplicable because it addressed an essential element of a crime and not a sentencing factor under the POAA.

[7] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

that recent United States Supreme Court precedent dictates that his prior convictions must be proved to a jury beyond a reasonable doubt is unsupported." *State v. Witherspoon*, 180 Wn.2d 875, 892, 329 P.3d 888 (2014). Thus, McCasland's argument fails.

McCasland also argues that under the Sixth and Fourteenth Amendments a sentencing court cannot constitutionally review whether out-of-state and Washington offenses are factually comparable if the offenses are not legally comparable. We reject McCasland's argument.

McCasland cites *Descamps v. United States*, 570 U.S. 254, 268-70, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), to argue that the trial court violated his constitutional "rights under the Sixth and Fourteenth Amendments" by conducting a factual comparability analysis. Br. of Appellant at 32. However, he also acknowledges that "*Descamps*' Sixth Amendment implications do not call into question Washington's comparability analysis under the [Sentencing Reform Act of 1981, ch. 9.94A RCW]." Br. of Appellant at 32 n.5 (quoting *Olsen*, 180 Wn.2d at 476).

In *Descamps*, the United States Supreme Court held that sentencing courts could not rely on certain documents to determine whether a defendant violated an indivisible statute covering a qualifying prior offense under the Armed Career Criminal Act of 1984 (ACCA).[8] 570 U.S. at 258; *Olsen*, 180 Wn.2d at 474-75. *Descamps* premised its holding on the concern that the sentencing court should not resolve factual disputes "'about what the defendant and state judge must have understood as the factual basis of the prior plea,' or what the jury in a prior trial must have accepted as the theory of the crime." 570 U.S. at 269 (quoting *Shepard v. United States*, 544 U.S. 13, /125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005)).

---

[8] 18 U.S.C. § 924(e).

No. 50370-1-II

In *Olsen*, our Supreme Court held that the factual prong of the comparability analysis for prior convictions under the POAA survived *Descamps*. 180 Wn.2d at 474. Thus, this argument fails.

We hold that having the trial court find by a preponderance of the evidence that he had a prior strike offense under the POAA did not violate McCasland's right to a jury trial or due process rights. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, C.J.

LEE, J.